### Frank Jackel v. L. Reiman.

#### No. 6572.

1. **Boundaries—Locative Calls.**—In a decree which described the land recovered as "beginning at a stake on the south bank of the Medina River (bearings given), thence south 1730 varas to a stake at the head of the lake where there are two springs (bearings), thence southward with the meanders of said lake 405 varas to the mouth of the lane on the south bank of said lake, thence south," etc., *held* that the call *the mouth of the lane* was locative, and would control the call *405 varas* with the meanders of the lake.

2. **Mistake by Officer in Executing Writ of Possession.**—The sheriff in executing the writ of possession disregarded the call for the mouth of the lane and put the plaintiff in the writ in possession to a line ascertained by measurement along the lake 405 varas. The plaintiff in the writ forcibly moved the fencing of the defendant, who sued for damages. *Held,* that only actual damages were recoverable; the act of the officer, though a mistake, protects against exemplary damages.

3. **Practice in Supreme Court.**—See case affirmed for actual damages upon remittitur of exemplary damages.

Appeal from Bexar. Tried below before Hon. G. H. Noonan. The opinion gives a sufficient statement of the case.

*Wm. Aubrey* and *Harrison & Harrison,* for appellant.— 1. Where a boundary line has been adjudicated as the issue in a cause, being essential, it will be conclusive thereafter, and parol evidence is admissible to show what boundary line was in issue. Foster v. Wells, 4 Texas, 101; Bailey v. Knight, 8 Texas, 58; Graves v. White, 13 Texas, 123; Magee v. Chadoin, 30 Texas, 665; Beat v. Steinbergh, 4 Cow., 559; French v. Howard, 14 Ind., 455; Packet Co. v. Sickles, 24 How., 345; Wood v. Jackson, 8 Wend., 45; Eastman v. Cooper, 15 Pick., 286; Wells' Res Adj., secs. 316, 338, 286, 301, 302.

2. The charge asked by appellant and refused by the court itself furnishes the proposition, i. e., that a deed for land with a description commencing at a given point and running back for distance so as to embrace a particular number of acres, does not convey a greater number than specified in it. Johnson v. Garrett, 25 Texas Supp., 19.

3. The true boundary line between the respective surveys of appellant

and appellee, in fact and as litigated and determined in the former suit between the same parties, was and is the line known as the Lucas line, commencing at a point on the south bank of the Dry Lake mentioned in the testimony of this cause, 392 varas east of the west boundary line of the Price survey (now appellee's survey), thence in a southerly direction to the southeast corner of the said Price survey. Sedgw. Tr. Title to Land, secs. 808, 810, 811; Stafford v. King, 30 Texas, 271.

*Oscar Bergstrom,* for appellee.—When a final judgment is once rendered by a court of competent jurisdiction and not appealed from or otherwise revised or set aside, it is conclusive of all matters which were actually or might have been determined in said cause; and when the judgment therein rendered is ambiguous, or it is necessary to offer evidence *dehors* the record to prove what was or might have been determined therein, in a collateral proceeding the court can not determine anew what ought to have been decided in such cause, and render such judgment as the court or jury may think ought to have been rendered, but it is bound by the judgment rendered in such former trial; and it is only for the purpose of ascertaining what was determined in the former judgment that evidence will be admitted *dehors* the record.

ACKER, PRESIDING JUDGE.—Frank Jackel and L. Reiman owned adjacent lands, Jackel's land being east of Reiman's. Each had his land enclosed, leaving a lane running north and south between them, the north end or mouth of the lane being south of a lake. A contention arose as to the locality of the boundary line between their lands, and Jackel brought suit against Reiman, claiming that the line was 20 varas further west than Reiman admitted it to be, and that Reiman therefore had a portion of his, Jackel's, land enclosed in his field.

In that suit a decree was rendered. "that the plaintiff, Frank Jackel, recover of the defendant, L. Reiman, the premises described and bounded as follows: A strip or parcel of land 20 varas wide. * * * Beginning at a stake on the south bank of the Medina River (bearings); thence south 1730 varas to a stake at the head of the lake, where there are two springs (bearings); thence southward with the meanders of said lake 405 varas to the mouth of the lane on the north (?) (south) bank of said lake, thence south," etc.

A writ of possession was issued on the decree, and in executing the writ the sheriff and surveyor run the line south from a point 405 varas around the meanders of the lake from the two springs on the north bank of the lake instead of from the mouth of the lane, and put Jackel in possession of the land east of this line, which included a portion of Reiman's field and his east fence. Jackel notified Reiman to remove his fence, which he

failed to do, and Frank Jackel, assisted by Joseph Jeckel and John Julian, tore the fence down and took the material away.

Reiman brought this suit against the Jackels and Julian to recover actual and exemplary damages for the destruction of the fence.

Both parties claim that the subject matter of this suit is identical with the subject matter of the suit of Jackel v. Reiman in which the above recited decree was rendered, the question in both being the locality of the boundary line between their lands.

The trial resulted in verdict and judgment for plaintiff Reiman for $150 actual and $200 exemplary damages, from which this appeal is prosecuted.

The decree in the former suit was conclusive of the only question which both parties concede to have been involved in it, and all that could have been accomplished by this suit was the correct interpretation or construction of that decree—the determination of the questions whether the rights of the parties as established by that decree had been violated, and if so, the amount of damages resulting from such violation.

The court submitted to the jury the questions, what was determined by the former suit, and whether the boundary line as established by the decree ran east of Reiman's field and left his fence on his land, but did not instruct the jury that the call in the decree for "the mouth of the lane" would control the call for distance in determining where the decree located the line.

If the correct construction of the decree established the line as run by the sheriff and surveyor in executing the writ of possession, then Jackel was rightfully in possession of the land east of the line so run; but if the line established by the decree runs south from the mouth of the lane, then the sheriff misconstrued the decree, and in executing the writ of possession in accordance with such misconstruction placed Jackel in possession of a portion of Reiman's land.

We think the charge of the court was quite as favorable to the defendants as they were entitled to have it. The call for "the mouth of the lane" was a locative call, capable of accurate and unmistakable ascertainment, and therefore of superior weight and dignity to the call for "405 varas with the meanders of the lake," the determination of which must depend on the distance from the margin of the lake that the line of 405 varas was run. One surveyor might follow the meanders of the lake close to its margin, while another might follow the meanders at some distance from the margin, especially as courses and distances of the meanders are not given. It is quite clear that the distance of 405 varas run with the meanders of the lake from the two springs on the north side in the two ways mentioned would not terminate at the same point on the south side of the lake, but no uncertainty could exist as to the locality of the mouth of the lane.

We think that the jury correctly construed the decree in finding that

the line established by it runs south from the mouth of the lane. The court charged the jury that if they found that the plaintiff's fence was erected on his land, and that the defendants tore it down and appropriated it to their own use, then they should find a verdict for the plaintiff and against such of the defendants as the proof showed had torn down and appropriated the same for such sum as it would cost to replace the fence of like material and in the same manner as it was before it was torn down.

There was no error in this charge. The plaintiff was entitled to recover such damages as the evidence showed he had sustained in consequence of the wrongful acts of the defendants. There was evidence from which the jury might have found that the plaintiff's actual damages exceeded the amount awarded by the verdict.

Jackel was placed in possession of the land by the sheriff under lawful process, and while the mistake of the officer in construing the writ can not shield him from liability for actual damages sustained by Reiman in consequence of his acts done in pursuance of such mistake, we think the writ and its execution by the officer in the manner shown should protect him against liability for exemplary damages.

We think there was nothing in the case calling for a charge upon the question of exemplary damages, and that the court erred in submitting that question to the jury.

We deem it unnecessary to discuss separately the several assignments of error. What we have said disposes of the controlling questions.

We are of opinion that the judgment of the court below should be reversed and the cause remanded, unless the appellee files a remittitur of the exemplary damages within fifteen days from the date of the judgment herein; in that event we think the judgment of the court below for actual damages should be affirmed with the costs of that court, but that appellee should be adjudged to pay the costs of this appeal.

*Affirmed as to actual damages.*

Adopted November 18, 1890.