**THOMPSON et al. v. ALLEN et al.**

No. 3582.

Court of Civil Appeals of Texas. El Paso.

Nov. 24, 1937.

Rehearing Denied Dec. 23, 1937.

Lennox & Lennox, of Clarksville, and A. L. Burford, of Texarkana, for appellants.

B. F. Edwards, of Clarksville, for appellees.

NEALON, Chief Justice.

This is a boundary suit involving the location of the west line of the Elizabeth Smith survey in Red River county. This survey was patented to Geo. F. Lawton, assignee, September 14, 1860. The James Northcross survey was patented February 7, 1871. The two surveys have a common boundary; the east boundary of the Northcross survey being the west boundary of the Smith survey. Two marked lines parallel to each other and 91 varas apart exist upon the ground. Plaintiffs claim that the more westerly of these lines is the west boundary of the Smith survey, while the defendants make the same claim as to the more easterly line. It was stipulated that plaintiffs own the Elizabeth Smith survey (except as hereinafter stated) in fee simple, and have deraigned their title from the sovereignty of the soil to all of the land in said survey. Excepted from this agree-

ment as to present ownership, however, are two tracts, one containing 10 acres and the other 38.42 acres, each of which is claimed under a deed, and neither of which is involved in this suit. Also excepted from the stipulation were such portions of the Smith survey as the defendants should be able to show they had acquired by limitation, estoppel, agreement, "or other legal conveyance." It was also stipulated that defendants had title to the Northcross survey, and deraigned their title from the sovereignty of the soil, save and except 25.85 acres, as to which they disclaimed.

The case was tried to the court. Judgment was rendered in favor of plaintiffs and against defendants for all of the land in the Elizabeth Smith survey, except three tracts, the first of which comprised 10 acres out of the Elizabeth Smith survey, conveyed by Texas Land & Loan Company to E. H. Thompson by deed dated November 8, 1893. The second tract comprised 38.42 acres out of the Elizabeth Smith survey, and was conveyed by Clarence Hocker to E. H. Thompson by deed dated April 20, 1923. The third tract was described as beginning 815 varas north of the southwest corner of the Elizabeth Smith survey, the same being at a wire fence; thence with said fence as follows: E. 9 varas N. 76½ E. 20 varas, N. 19¼ E. 99½ varas, S. 60 E. 120 varas, N. 13 E. 137 varas, N. 28 E. 44 varas; thence west to the west boundary line of the Elizabeth Smith survey; thence south to the place of beginning. The judgment provided that the defendants should have and retain all of the land now under inclosure by their fence, regardless of the number of acres or any error in description by metes and bounds. The judgment further decreed that the southwest corner of the Elizabeth Smith survey should be the center of the Clarksville-Albion public road, as it now runs, "and said corner is witnessed by an elm bearing S. 85½ E. 55 feet and a red oak bearing N. 38 E. 51 feet both mkd. X." From this judgment defendants in the district court appeal.

The court made comprehensive findings of fact, which we shall summarize and quote from to the extent necessary to an understanding of this opinion.

The beginning point of the Elizabeth Smith survey, as shown by the original field notes, was the southeast corner of a survey made for William Scott; succeeding calls were for an easterly line running south 2,200 varas to a stake in the north boundary line of a survey made for N. Webb; thence west, passing the northwest corner of said survey at 416 varas, in all 3,288 varas "to a stake in the center of Albion road, from which a pine mkd. thus x stands E. 15 vrs., and a pine west of the road S. 62 W. 6½ vrs. Mkd. the same; thence N. with said road and at 360 vrs. leaving the road, in all 2200 vrs. to a stake in the S. boundary line of the ⅓ League survey made for Wm. Scott by Amos Morrill, assignee, a pine E. 6 vrs. mkd. X, a water oak S.E. 10 vrs. Mkd. S; thence E. with Scott's S. B. line, crossing the Albion road, in all 3288 vrs. to the place of beginning, containing 1200 acres, more or less."

The court found that on January 1, 1929, the plaintiffs were, and still are, the sole owners in fee simple of the Elizabeth Smith survey, except as shown in the judgment; that until some time prior to the filing of the suit the plaintiffs, and those under whom they claimed, believed and understood that the more easterly of the marked lines hereinbefore mentioned was the west boundary line of the Smith survey, but that they were mistaken in their belief, and that this belief was induced by the acts of E. H. Thompson in pointing out to them this line as the west boundary line of said survey; that "all the bearing trees at the four corners of the Smith survey have disappeared and cannot now be found upon the ground"; that at the date of the survey of the Elizabeth Smith headright survey, its southwest corner "rested in the center of the Albion and Clarksville road, and that the west boundary line ran from thence north along said road for some distance, and continued north through the woods to the south boundary line of the William Scott Headright Survey, and that this is the marked line farthest to the west above referred to, and that there were at that time bearing trees for both the northwest and southwest corners of the Elizabeth Smith Headright Survey, and that these same bearing trees and this same road are called for as the northeast and southeast corners of the James Northcross Headright Survey"; that the Albion and Clarksville road is in practically the same location at this point as it was when the original survey was made, and the west boundary line of the Smith survey runs "approximately the same distance north along this road as it did when said survey was first made, and I find that this line, the south end of which rests in the center of the Albion road,

is the true west boundary line of the Elizabeth Smith Headright Survey, and that this road is the only monument called for in the Patent of the Elizabeth Smith Headright Survey that is still in existence"; that no dispute ever existed between the plaintiffs and defendants or their predecessors in title as to the true location of said west boundary line until a short time before the filing of this suit, and there was never any agreement between them as to the location of said west boundary line, but only an acquiescence by plaintiffs and their predecessors in title in the line pointed out to them by E. H. Thompson as being in the west boundary line of said survey; that plaintiffs are not estopped to claim title to the true boundary line as it exists upon the ground; that defendants have title by the 10 years' statute of limitation to all of the land in the Elizabeth Smith survey inclosed by their fence as it existed at the date of the trial; that the evidence fails to show that the defendants did not get 1,000 acres of land in the Northcross survey, or that what they got was worth less than they paid for it, if the true west boundary line of the Smith survey is located as the court finds it to be; that the evidence fails to show any road at any time 91 varas east of the south corner of the Smith survey as found by the court; that there is no specific evidence as to the width of the Albion and Clarksville road, but it was a frequently traveled road in 1860 and ever since, and the line follows said road "on approximately the same course and approximately the same distance, and takes the same course after leaving the road to its terminus as it did in 1860, and that where there is old timber left the line is marked on the ground; that in order to construct the Smith survey with its southwest corner in the center of the Albion road, the south line must be extended over the patent call approximately 67 varas, and that the north line will have to be extended approximately the same distance, but that to so extend the calls for distance would create no vacancy between the Elizabeth Smith and Jackson Smith surveys"; that to construct the Smith survey by course and distance beginning at the east corner of the William Scott survey and running west the distance called for in the patent would place the west boundary line of the Smith survey and the east boundary line of the Northcross survey approximately 67 varas east of the line contended for by the plaintiffs and approximately 24 varas west of the line contended for by defendants, and at a place where no marked line and no monument of any kind exists, but since the west boundary line of the Smith and the east boundary line of the Northcross surveys is a common line, no vacancy would exist between said surveys; to rely on course and distance to establish the west boundary line of the Elizabeth Smith headright survey would require the court to disregard the only monument called for in the patent which is still in existence, that is, the Albion and Clarksville road, the center of which is designated as the southwest corner of the Elizabeth Smith survey in the patent and in the findings of the court; "the field notes of the Northcross survey do not call for the Albion road at the southwest corner of the Smith survey, but call for two small and one large pine trees, without giving course or distance, but that the calls in said patent do call for a stake near the Albion road for the Northcross survey's first southeast corner," which is some distance southerly from the southwest corner of the Elizabeth Smith survey; plaintiffs and their predecessors in title were familiar with the location of the Albion and Clarksville road during the time they acquiesced in the line claimed by defendants, and knew or could have known that said title (line) was approximately 91 varas east of the road on the south line of the Elizabeth Smith survey; the evidence fails to show there was any dispute about the line until about 1929, and it fails to disclose any dispute as to the location of any other survey or any other line than said west boundary line; a line run west on the south boundary line of the William Scott survey from its southeast corner on a well-marked line a distance of approximately 3,364 varas would reach a corner, the north end of the line claimed by the defendants, and that this line extends south about 2,200 varas and is well marked; "the south, east and north lines of the Elizabeth Smith survey are all well marked, and there are two sets of marks on some trees, and all correspond as to age with the marks on both the line claimed by the defendants and the line claimed by the plaintiffs."

Opinion.

■ No assignments of error challenge the trial court's findings of fact upon the ground that they are without support in the evidence. We have, therefore, accepted them as correct without further question.

794

■ Appellants urge three assignments of error. The first is to the effect that the court having found that the defendants established limitation title under the 10-year statute to a tract which they had under inclosure and which was within the disputed strip, the court erred in not extending such right to the entire area in dispute, which was less than 160 acres. They invoke article 5510 of the Revised Civil Statute. The assignment must be overruled. Possession of the inclosed tract was taken and held in the belief that it was included within the boundaries of the James Northcross survey. Under such a state of facts the limitation claimant is held to acquire title to only so much of the land as he actually occupies. Bracken v. Jones, 63 Tex. 184; Titel v. Garland, 99 Tex. 201, 87 S.W. 1152; Holland v. Nance, 102 Tex. 177, 114 S.W. 346.

■ Appellants' second assignment of error is based upon the proposition that when original bearing trees cannot be found the survey must be bounded by course and distance, and the court erred in requiring the course and distance call of the south boundary to yield to the call for the center of the Albion road. The court found, as stated, that the road called for in the patent was "a frequently traveled road in 1860 and has been ever since, and that the line follows said road on approximately the same course and approximately the same distance and takes the same course after leaving the road to its terminus as it did in 1860, and that where there is old timber left the line is marked on the ground." The original call has been stated. The question then is, Should the court's determination have been controlled by the course and distance call rather than by the call for "a stake in the center of the Albion road, from which a pine marked thus X stands east 15 vrs. and a pine west of the road S. 62 W. 6½ vrs. mkd. the same," the stake and the trees having disappeared? The court having found, upon sufficient evidence, that the present road is located approximately where it was in 1860, we have the question of a call for an artificial object located on the ground as against a conflicting course and distance call. Having located the road and its center, the locative call therefor must prevail, and the trial court did not err in so concluding, even though the south line of the Elizabeth Smith survey must be extended 67 varas over the call in the patent and the north line must be extended approximately the same distance to achieve this result.

"It has been often said by this court that the general rules are, that the location should be governed, first, by natural objects or boundaries, such as rivers, lakes, creeks, etc.; second, artificial marks, such as marked trees, lines, stakes, etc.; and, third, course and distance. * * * Of all these indicia of the locality of the true line, as run by the surveyor, course and distance are regarded as the most unreliable, and generally distance more than course, for the reason that chain-carriers may miscount and report distances inaccurately, by mistake or design." Stafford v. King, 30 Tex. 257, 271, 94 Am.Dec. 304.

■ When artificial objects are identified on the ground, calls for them prevail over course and distance calls as a matter of law. Wm. Cameron & Co. v. Taylor, Tex.Civ. App., 288 S.W. 268. In harmony with the court's holding in the instant case is that in Jackel v. Reiman, 78 Tex. 588, 14 S.W. 1001, 1002, in which it is held that a call for "the mouth of the lane" controls a call for distance.

■ By their third assignment appellants insist that the court erred in holding that no agreement had ever been made with reference to the now disputed line, and that plaintiffs were not estopped from claiming that the line is located at a different place from that claimed by defendants, because the court found as facts: (1) That plaintiffs and defendants acquiesced in and recognized as the true line the one claimed by defendants; (2) that while owner of 25 acres in the Northcross survey E. H. Thompson sold the same to C. and O. B. Hocker and purchased from C. and O. B. Hocker 38 acres out of the Smith survey, and each recognized as the true line that now claimed by defendants; (3) and that plaintiffs' purchase was with reference to said line and was specifically pointed out to plaintiffs by C. Hocker as the west boundary of the Elizabeth Smith survey. The court further found that there was no dispute as to the west line of the Smith survey until about 1929. The court also found that until some time prior to the filing of this suit plaintiffs and those under whom they claim believed that the more easterly marked line was the west boundary line of the Smith survey, but that they were mistaken in their belief, and that this belief was induced by the acts of E. H. Thompson in pointing out this line to them as the west

boundary line. None of the parties ever had pedal possession of that portion of the disputed strip awarded to plaintiffs by the judgment. In view of the court's finding that there was no dispute as to the location of the west boundary line until a short time before the suit was filed, the acquiescence of plaintiffs may not be given the effect that defendants desire. Acquiescence is but evidence tending to show the true boundary, as fixed by documents of title or by agreement. It is not conclusive. As said by the Amarillo Court of Civil Appeals, in Buie v. Miller, 216 S.W. 630, 633: "The strongest statement of which the rule with reference to acquiescence can be made is that it should have great weight, and may furnish a strong presumption that the line acquiesced in is the correct line. However, acquiescence is a question of fact for the jury. Lopez v. Vela (Tex.Civ.App.) 200 S.W. 1111, and authorities cited; Medlin v. Wilkins, 60 Tex. 409; Hefner v. Downing, 57 Tex. [576] 580; Wiley v. Lindley (Tex.Civ.App.) 56 S.W. 1001; Camp v. League (Tex.Civ.App.) 92 S.W. 1062, 1066. But where there is no room to doubt the true location, a mere acquiescence in another line would not support a verdict in favor thereof. Bundick v. Moore-Cortes Canal Co. (Tex.Civ.App.) 177 S.W. 1030, at page 1036; Campbell Banking Co. v. Hamilton (Tex.Civ.App.) 210 S.W. 621."

Mere silence or inaction will not destroy a legal title unless added to adverse possession for a sufficient time, and under conditions prescribed by the statutes of limitation to mature such possession into title. Williams v. Conger, 49 Tex. 582, 602; King v. Harter, 70 Tex. 579, 8 S.W. 308.

The assignment is overruled.

Judgment is affirmed.