**LUSK v̂. ONSTOTT.**

No. 5623.

Court of Civil Appeals of Texas.   Amarillo.

Feb. 21, 1944.

See also 161 S.W.2d 819.

Bradley & Wilson, of Lubbock, Lloyd A. Wicks, of Ralls, and Joe S. Moss, of Post, for appellant.

Burton S. Burks and Victor H. Lindsey, both of Lubbock, for appellee.

STOKES, Justice.

This is an action for damages instituted by the appellee, B. R. Onstott, against the appellant, Z. P. Lusk, in which appellee alleged his land had been damaged by overflow surface waters precipitated upon it by the act of appellant in cutting a ditch across the intersection of two public roads. The case was submitted to a jury upon special issues, in answer to which the jury found that by digging certain irrigation ditches upon his land the appellant had changed the natural flow of surface waters thereon, causing an accumulation of such waters in the southeast portion of his farm; that in cutting the ditch across the intersection of the roads at his southeast corner appellant had caused the surface waters to flow from his land upon appellee's land in greater volume and amount than would have flowed thereon if the ditches had not been cut; and that the flow of water from appellant's land across appellee's land resulted in permanent damage to 85 acres of appellee's land to the extent of $20 per acre. In addition to the actual damage, appellee prayed for exemplary damages, and in answer to special issues on that phase of the case the jury found that appellant was prompted by malice at the time he cut the ditch across the road intersection and awarded appellee an additional sum of $800 as exemplary damages. Appellee alleged that his land had been damaged to the extent of only $15 an acre and the court entered judgment in his favor for $1275 actual damages, rather than for the full $20 per acre as found by the jury. He also entered judgment for $800 exemplary damages, resulting in a judgment against appellant for the total sum of $2075.

Appellant offered no testimony except his cross examination of one witness, whose testimony was given by deposition, and at the close of the testimony he moved for a peremptory instruction. The motion was overruled and after the verdict was returned by the jury he urged a motion for judgment non obstante veredicto, which was likewise overruled, and he has duly perfected an appeal to this Court.

Appellant presents nine assignments of error but, as we view the record, there are two issues which we think must control our disposition of the case. They are, first, that the court erred in submitting the case to the jury over his motion for an instructed verdict and in overruling his motion for judgment non obstante veredicto, because there was no evidence separating the damage, if any, that was caused to appellee's land by the acts of appellant in cutting the ditch from that which was caused by the natural flow of the water; and, secondly, that the court erred in admitting certain testimony and in submitting issues, over his objections, concerning the alleged malice of appellant in doing the acts complained of, which constituted the ground upon which appellee sought exemplary damages.

The testimony shows that appellant owns a half section of land, consisting of 320 acres, and that appellee owns a similar tract lying southeast of appellant's land. The two tracts join at appellant's southeast corner and appellee's northwest corner. Two roads intersect at this corner, one running east and west along appellant's south line and appellee's north line, and another running north and south along appellant's east line and appellee's west line. Both of these roads are ordinary dirt roads but they had been graded to some extent by the county, which resulted in the creation of borrow ditches on each side of both of them. The entire country in which the two farms are located is of a flat nature interspersed with numerous depressions in which water accumulates during heavy rains and forms lakes. One of these lakes is located on appellant's farm in or near its southeast corner. Another is located on the south portion of appellee's farm and is the largest of any of the lakes in the immediate vicinity. Some time prior to the incident which precipitated the suit, appellant had drilled an irrigation well on the north portion of his land, which was higher in elevation than the south portion, and in order to irrigate portions of his farm he constructed a ditch running south from the well to a point near the south line of his farm and only a short distance north of the east-west road. This ditch then turned east toward

the lake in the southeast portion of his farm and had the effect of diverting the natural flow of water in a diffused state from the north side of his farm southward, causing it to enter the lake near his southeast corner. Before the irrigation ditches were cut by appellant the surface waters naturally flowed in a diffused state from about the center of his farm in a southerly direction and during heavy rains much of it crossed the road at various places and entered the farm of one Martin immediately south of appellant's land and west of appellee's land. The natural drainage of the land lying north of appellee's land and east of appellant's land was to the southwest toward the lake in appellant's southeast corner. The testimony shows that before any of the land had been touched by the hand of man, the natural flow of the surface waters from appellant's land during heavy rains caused some of it to enter a lake in the southern portion of the Martin farm and when this lake filled, the water then flowed in a southeasterly direction, crossing the road through a culvert and entering the southern portion of appellee's farm, finally finding its level in the large lake on his land. In constructing the two roads, the county authorities did not place a culvert or other outlet at the intersection, and the water falling on appellant's land and that which accumulated thereon from other lands in the vicinity entered the lake on the southeast portion of his farm and at times overflowed the road and escaped into the borrow ditch on the west side of the north-south road, by which it was conducted to a point near appellee's southwest corner where it entered the culvert across the north-south road east of Martin's farm and then ran across a portion of appellee's land and entered the large lake on the south portion of his farm. The farm lying immediately south of appellee's land belongs to one Dobkins, and the testimony shows that the north portion of the Dobkins land drains in a northerly direction and during heavy rains the water flows in a diffused state north and some of it enters appellee's large lake.

On June 8, 1941, an unusually heavy rain fell in the vicinity and early the next morning another of like intensity fell, which resulted in the accumulation of an unusually large quantity of water on the south portion of appellant's land especially in the lake near the southeast corner. One witness estimated that about 140 acres of appellant's land stood under water after these rains. In order to relieve his land of the large accumulation, appellant and his son-in-law, Wallace, cut a ditch across the intersection of the two roads at his southeast corner, which released this water into the borrow ditch on the west side of the north-south road, from which point it followed the borrow ditch in a southerly direction to the culvert across that road near appellant's southeast corner where it was diverted and entered a ditch that had been cut or washed from the culvert to the large lake on appellee's land. This had the effect of augmenting the body of water in appellee's lake and caused it to cover a large portion of his land that ordinarily was not covered by it. The testimony shows that a large portion of water flowed across the northwest portion and west side of appellee's land, which resulted in large ditches and much erosion.

As we have said, according to the testimony, water ordinarily accumulated in appellee's lake from three sources after heavy rains, one being from its natural flow into the lake on Martin's land, thence into appellee's lake, another from the borrow ditch to the same point, and a third from Dobkins' farm on the south. By cutting the ditch across the intersection of the roads, the volume of water which ultimately entered appellee's lake was augmented, but appellant asserts that even if this augmentation resulted in some of the injury alleged by appellee, he was not entitled to a judgment against appellant unless he showed by the testimony the amount of damage that resulted to his land by the act of appellant in cutting the ditch at the road intersection.

■ The law in reference to this contention is so well settled in this State that we do not deem it necessary to reiterate it at length here. In many cases of this character it has been said by our courts, in effect, that where it appears that only a part of the damage suffered by the plaintiff resulted from the acts charged against the defendant and a part thereof was caused by some other agency or person, a judgment against the defendant cannot be sustained unless the evidence is sufficient to show what part of the damage is attributable to the acts of the defendant. City of Austin v. Howard, Tex.Civ.App., 158 S.W.2d 556; Texas & P. R. Co. v. Dunn, Tex.Sup., 17 S.W. 822; D. H. Fleming & Son v. Pullen, Tex.Civ.App., 97 S. W. 109; Currie v. Trammell, Tex.Civ.

App., 289 S.W. 736; City of Pampa v. Long, Tex.Civ.App., 110 S.W.2d 1001; Houston Chronicle Pub. Co. v. Martin, Tex.Civ.App., 64 S.W.2d 816; Panhandle & S. F. R. Co. v. Wiggins, Tex.Civ.App., 161 S.W.2d 501.

Appellee does not impugn the principle of law enunciated in these cases, but contends that he fully discharged the burden thus cast upon him. We have carefully read the entire statement of facts and it is our conclusion that the testimony failed in this respect. Appellee and the witness O'Briant testified that a large portion of the north and northwest parts of appellee's land was badly washed by the water which flowed over it during these rains and that his land was so badly washed and eroded that after the overflow, the dirt rested against his twenty-six-inch hog fence, covering it to within an inch of the top, but the record does not contain any testimony to the effect that the water causing this damage came from appellant's land. The most that can be deduced from it is that the water came from the northwest. One witness stated that it came from the northwest corner, but whether he meant the ditch that was cut by appellant at the northwest corner or that it fell north of the northwest corner and entered by some other means is not shown. We quote a portion of appellee's testimony to show the uncertainty of all of the testimony on this vital point:

"Well, of course, the water, when he cut it, it ran down the bar ditch, and then that night when that big rain came, why it just, all the water it just flowed, it just went as straight across my farm, made a ditch just as straight across my farm where it come down there at that corner as you could put one, washed a ditch out there, and then, of course, it just flowed and run around everywhere, washed the water, washed the soil all away and cut my terraces. And then the next morning we had another rain along just about daylight and it done the same thing, it just come down, I would say, about two feet deep, just come right down by my house, and, of course, it was just spread out all over the whole country on my farm there."

O'Briant testified that all the west and a portion of the north side of appellee's farm were injured and that "the water came across from this northwest corner there." This is the nearest the testimony came to supporting appellee's allegations in respect to his damage being caused by the act of appellant in cutting the ditch across the road intersection and, in our opinion, it is too indefinite and uncertain to support the verdict of the jury. It will be noted that appellee said that when appellant cut the ditch across the intersection, the water ran down the borrow ditch and then that night when another big rain came it flowed straight across his farm and cut a ditch, but he did not locate the ditch nor that portion of his farm across which the water flowed. The testimony showed there was a ditch leading from the culvert in the road near appellee's southwest corner to his lake on the southern portion of his farm, but it is not shown when, nor how, this ditch was placed there and we are not informed by the testimony whether this is the ditch referred to by appellee or whether the water cut a ditch in some other portion of his farm. Moreover, there is nothing in the testimony to show where the 85 acres are located which the jury found had been damaged to the extent of $20 per acre. Appellee asserts in his brief that this tract was in the north or northwest portion of his farm and that the erosion was caused by the water which came through the ditch cut by the appellant at the road intersection. The testimony tends to show that possibly water coming through the ditch overflowed the road immediately after entering the borrow ditch and crossed appellee's farm from a northwesterly to a southeasterly direction, but it does not show this with any degree of certainty and it would be mere speculation upon the testimony to conclude that the damage arose in that manner. In our opinion, the testimony was not sufficient to form the basis of the jury's verdict on the question of actual damages, and appellant's contention will have to be sustained.

In Special Issue No. 9 the court asked the jury to fix the amount, if any, that should be allowed the appellee as exemplary damages. In connection with this special issue the court charged the jury that the term "exemplary damages," as used in the charge, meant the sum awarded as punishment of the defendant for any malice the jury might find to exist and was only in the nature of a penalty allowed by the law at the discretion of the jury, and that it should be proportionate to the actual damages, if any, which they might find was incurred by the appellee. It will be observed from this charge that malice

was the only ground submitted as a basis for exemplary damages. This charge and the finding of the jury were based upon an incident that occurred some three weeks after the rains of June 8 and 9, 1941. The ditch at the intersection had been refilled by order of one of the county commissioners and some three weeks thereafter another heavy rain fell in the community and appellee discovered the ditch had again been opened. He and two of his sons went to the intersection and again filled the ditch. About the time they finished it, Wallace and his wife, son-in-law and daughter of appellant, who lived on appellant's farm, came from the house down to the intersection and Wallace got out of his car and immediately attacked one of appellee's sons, from which a fight ensued, during which Wallace told his wife to bring him the gun. She ran to the car, procured a gun and some cartridges, and started toward her husband. Wallace was then approaching appellee who held a shovel in his hand and he struck Wallace with the shovel. About this time the other son of appellee took the gun away from Mrs. Wallace and the difficulty seems to have ended at that point. This incident constitutes the principal ground upon which appellee contends he was entitled to have the question of malice and exemplary damages submitted to the jury. Another incident occurred shortly before the ditch was opened the last time. Appellee was plowing in his field when appellant and Wallace came to him and discussed the matter of the ditch being again filled. Appellant requested appellee to go to the intersection, which appellee did, and while they were there discussing the matter, appellant evidently became angry and said to appellee, "Me or you one is going to have to leave the country." Appellee told him he did not want any trouble and immediately left. This incident happened some time after the ditch was originally cut and while the controversy as to whether it would remain open or closed was in progress. Appellant objected to the testimony concerning these incidents and also objected to the submission to the jury of any special issue upon the question of exemplary damages. Appellee justifies the admission of the evidence concerning the affray by the assertion that Wallace was the son-in-law and agent of appellant; that they were acting together in their efforts to keep the ditch open; and that appellant was liable for the acts and conduct of Wallace. We cannot agree wtih appellee in this contention. Appellant was not present when Wallace made the assault and, as far as the testimony shows, he knew nothing about it. It was not shown that he directed it or afterwards ratified it, or that he was ever informed it would likely occur or that it had happened. Conceding that Wallace was the agent of appellant in the matter of cutting the ditch and keeping it open, still appellant would not be equally guilty with Wallace as to the assault unless he directed it or knew beforehand that it would likely be committed and encouraged or approved Wallace's intention to commit it, or in some manner ratified it after it happened. A principal is usually liable for injuries inflicted upon third persons or their property by the malicious or wanton conduct of his agent when committed within the scope of the agency, but where one seeks to ascribe to the principal acts of malice or wantonness of his agent in order to recover exemplary damages, the evidence must show that the principal had knowledge of, or participated in, the malice or that he ratified and adopted the acts of the agent which constituted the alleged malice. Commonwealth of Massachusetts v. Davis, 140 Tex. 398, 168 S.W.2d 216; Taylor v. Esparza, Tex.Civ.App., 8 S.W. 2d 288.

■ In view of the holdings of our courts in the cases cited above and many others, as well as the soundness of the reasoning, it is our opinion that the court committed reversible error in admitting testimony concerning the affray that occurred between Wallace and appellee and his sons. That testimony in no way established legal malice of appellant toward appellee at any time and its admission before the jury was exceedingly prejudicial to appellant.

■ In view of another trial, we deem it expedient to say that, in our opinion, under the record before us, the court erred in submitting the question of exemplary damages at all, for the reason that there was no testimony upon which to base a recovery of that element of damages under the allegation of malice. As we have said, the malice here involved consists of alleged hatred or ill will. In order to recover such damages it must be shown that the defendant was actuated by malice or

willful intent to injure in doing the identical thing complained of. The act which appellant committed and of which appellee complains was the cutting of the ditch across the intersection of the roads, thus releasing a large volume of water upon appellee's land. Up to the time the ditch was cut, appellant and appellee had been on friendly relations, no acrimonious feelings of any kind existing between them. While they had considerable controversy concerning the opening of the ditch, there is no evidence they became angry with each other or that appellant entertained any ill will toward appellee. Moreover, when appellee approached appellant and complained to him concerning the release of the water through the opening, immediately after appellant had opened the ditch the first time, appellant told him that his (appellee's) land was lower than appellant's land and it would have to take the consequences. This shows, we think, that appellant believed he was acting within his legal rights in releasing the water from his land. It was some time after the first opening of the ditch and after the damage occurred to appellee's land on June 8 and 9, 1941, that Wallace made the assault upon appellee's son and precipitated the affray which followed. It seems apparent, therefore, that Wallace's ill feeling arose after at least most of the damage occurred and that the first act of opening the ditch was not done in an effort thereby to vent spleen or gratify malice, because, as far as the testimony shows, none then existed, even in the mind of Wallace. Malice, in respect to exemplary damages, does not consist of personal hatred, ill will, or animosity. It consists of a state of mind that is reckless in its nature and implies a determination to do a thing regardless of legal rights or for the purpose of inflicting an injury. True, it may be motivated by personal ill will, hatred, or animosity, but unless the wrongful act proceeds from the malice and is done deliberately and in disregard of legal rights or in an effort to gratify passion engendered by hatred or ill will, the latter become immaterial in so far as exemplary damages are concerned.

According to the record, the statement made by appellant to appellee to the effect that one of them would have to leave the country was, of itself, no evidence of malice in respect to the damages that had occurred before the statement was made, for all of the reasons detailed above in reference to the conduct of Wallace. As we understand the record, very little, if any, damage occurred to appellee's land as a result of overflow after this statement was made by appellant but, even if it had, there is nothing to show that it was occasioned by any malice or ill will implied in the statement. Moreover, all of the testimony on this phase of the case indicates strongly that whatever ill feeling existed between appellant and appellee was the result of their controversy over the cutting and filling of the ditch and arose after the act, of which appellee complains, had been performed by appellant. In our opinion, this contention of appellant will also have to be sustained. Foley v. Northrup, 47 Tex.Civ.App. 277, 105 S. W. 229; Sparks v. Ponder, 42 Tex.Civ. App. 431, 94 S.W. 428; First Bank of Mertens v. Steffens, 51 Tex.Civ.App. 211, 111 S.W. 782; Erie Telegraph & Telephone Co. v. Kennedy, 80 Tex. 71, 15 S.W. 704.

Because of the errors we have discussed, the judgment of the court below will be reversed, and the cause remanded.