**Don JACKSON, Appellant,**

**v.**

**Fred WALLIS, Appellee.**

**No. 16324.**

Court of Civil Appeals of Texas,
Houston (1st Dist.).

Oct. 3, 1974.

Rehearing Denied Oct. 17, 1974.

**336**

---

Fouts, Moore, Caldwell, Coleman & Royall, Donald R. Royall, Houston, for appellant.

Houchins & Tasker, Kenyon Houchins, Houston, for appellee.

EVANS, Justice.

This suit was brought by Fred Wallis and his tenant, Elton Brietzke, to recover damages resulting from the loss of a fence which disappeared from Wallis' land without a trace Labor Day, September 6, 1971. After a non-jury trial, the trial court determined that the defendant, Don Jackson, had removed the fence or caused it to be removed, without warning or notice to Wallis or his tenant, and awarded Wallis $450.00 for the loss of the fence and $150.00 for the loss of hay and feed. Finding that the act was done wilfully and wantonly and with intent to injure Wallis, it also awarded $600.00 as punitive damages. It found Brietzke suffered no actual damages and denied his claim for relief.

On this appeal Jackson asserts that the evidence is insufficient to support the trial court's finding that he removed the fence or caused it to be removed and that such was done wilfully, wantonly and with malice.

The fence in question was a 4-strand barbed wire fence located entirely on the Wallis tract and running parallel with the tract's east line, which was also the west line of Jackson's property. The Wallis tract consisted of approximately 18 acres entirely enclosed by a fence and an interior cross fence divided the land into two tracts of apparently 9 acres each. The south nine acres was leased to Mr. Brietzke and the feedstuff and hay belonging to Wallis were situated on the north nine acres.

The missing fence was last observed standing on Labor Day afternoon and it apparently disappeared over night. While there is some discrepancy in the testimony, Brietzke apparently discovered the fence missing the day following Labor Day and his wife then called Mrs. Wallis who drove up to the land to investigate. Mrs. Wallis testified that the fence posts had been cut off at ground level and their location covered with dirt. Every trace of wire and posts had been removed and no remains of the fence were ever found.

Mrs. Wallis further testified that she had first met and talked to Jackson earlier that summer and he told her he wanted to take the fence down and put a board fence in its place. She testified that subsequent to her conversation with Jackson, she consulted her attorney who wrote a letter to Jackson on her behalf. This letter dated July 23, 1971, which was introduced in evidence, informed Jackson that the fence belonged to Mrs. Wallis and suggested that he either call Mrs. Wallis or her attorney if he wished to discuss the matter in a spirit of cooperation.

The tenant, Brietzke, said he had several conversations with Jackson who told him he was going to build a fence and was already building a fence on the east side of his tract and was coming around toward the Wallis tract. He said Jackson told him he was going to tear the fence down and that he was going to tear it down all at one time. He said that Jackson later told him he might put an electric fence on the line to keep Brietzke's cattle out so he could tear the fence down.

Access to the Wallis tract was gained by an easement road running along the north line of the tract and which extended beyond its northwest corner to provide access to the Jackson land. On the day Mr. and Mrs. Wallis drove up to their property, after being informed that the fence had been removed, they saw a wire gap had been placed across the easement road and that a number of Brietzke's cows were outside the gap, either on the easement road

or the highway right of way. Attached to a post at the gap was the following handwritten note:

"DO NOT PEN YOUR COWS ON MY PROPERTY
JACKSON"

Jackson admitted that he had discussed taking the fence down with Mrs. Wallis who had informed him that the fence was hers and not to take it down. He said he had talked with the County Attorney who had advised him that under the law he was required to give six months' notice before taking any action. See Article 1354 of the former Vernon's Ann.Penal Code of Texas and Article 3952, Vernon's Ann.Civ.St. He said he had a group of people on his property on Labor Day afternoon and that they all left around 7:30 P.M. and he left around 8:00 to 8:45 P.M. He said the fence was there that night when he left and was gone the next afternoon when he returned. He admitted closing the gap and putting the sign on the post but said he did that a day or so after he saw the fence had been removed. He further testified that he had complained to Mrs. Wallis about the fence and told her he was going to put up another one; that he owned the fence and could take it down or replace it if he wanted to.

No one saw Mr. Jackson, or anyone under his direction, removing the Wallis fence and he did not admit having done so. Hence the trial court's finding must rest upon sufficiency of the circumstantial proof.

■ Jackson's declarations to Mrs. Wallis and others that he was going to remove the fence was some evidence of a plan or design to perform that act. Through Jackson's own testimony it was established that he and his visitors were the last persons in the vicinity of the fence on that Labor Day evening. Thus, there was evidence tending to show that Jackson had both motivation and opportunity to remove the fence on that particular day. These circumstances, considered together with the established facts showing the manner and time of removal of the fence, in our opinion was sufficient evidence upon which the trial court could have concluded that Jackson performed the act. 2 McCormick & Ray, Texas Law of Evidence, §§ 1533–6, pp. 381–9 (1956); Evans v. Ball, 6 S.W.2d 180 (Tex.Civ. App.—San Antonio 1928, writ dism'd). There was testimony from which the trial court could have inferred motivation and opportunity to act on the part of persons other than Jackson. However the credibility of the witnesses and the weight to be given their testimony was a matter for the trial court's determination. In Re Marsh, 344 S.W.2d 251 (Tex.Civ.App.—Amarillo 1961, writ ref'd n. r. e.). We hold that the trial court's judgment is supported by evidence establishing the ultimate fact "with that degree of certainty as to make the conclusion reasonably probable." McMillen Feeds, Inc. of Texas v. Harlow, 405 S.W. 2d 123 (Tex.Civ.App.—Austin 1966, writ ref'd n. r. e.).

■ The act of the removal of the fence was clearly done intentionally and, under the circumstances of the case, the trial court could properly have determined that the act was done in knowing violation of the rights of another and therefore maliciously. Aetna Life Ins. Co. ·v. Love, 149 S.W.2d 1071 (Tex.Civ.App.—El Paso 1941, writ dism'd, judgmt cor.); Lusk v. Onstott, 178 S.W.2d 549 (Tex.Civ.App.—Amarillo 1944, no writ). Appellant's first two points of error are overruled.

In his final point of error Jackson asserts the trial court erred in its award of damages for $450.00 for the loss of the fence, claiming there was no evidence introduced concerning the proper measure of damages.

Mrs. Wallis testified that the original fence had been built in 1964 of cedar and penta-treated posts set five feet apart with four strands of barbed wire and was about ½ mile in length. Her tenant, Mr. Brietzke, testified the posts were at varying intervals of five to nine feet apart. The tes-

timony was sharply controverted at to the condition of the fence before it was removed. The replacement fence consisted of steel posts and creosoted posts set at five to seven foot intervals with four strands of barbed wire on the top and 32 inch hog wire below.

There was testimony indicating the cost of replacing the fence was the sum of $450.-00, the amount of the court's award. However, the evidence further showed that this cost included items such as steel posts and hog wire which were not part of the original fence. There was no breakdown of the costs of the various materials in the replacement fence, nor was there a showing that its overall value was comparable to the value of the fence which had been removed.

The proper measure of damages was the reasonable value of the fence as an enclosure at the time of its removal  Gulf, C. & S. F. Ry. Co. v. Wallace, 14 Tex.Civ. App. 386, 37 S.W. 382 (1896, no writ). In arriving at such value the trial court could properly have considered the cost of replacing the fence with a new fence of substantially the same construction. Jackel v. Reiman, 78 Tex. 588, 14 S.W. 1001 (1890). However Wallis was not entitled to compensation for the value of a new fence of substantially better construction than the original fence. W. R. Pickering Lumber Co. v. Bussey, 294 S.W. 665 (Tex.Civ. App.—Beaumont 1927, no writ). We sustain appellant's third point of error.

For the reasons stated, we reverse the trial court's judgment and remand same for further proceeding; provided that if appellee, Fred Wallis, shall remit the sum of $900.00 within fifteen days from the date hereof the trial court's judgment will be reformed so as to provide that appellee, Fred Wallis, will be awarded the total sum of $300.00 and, as so reformed, the judgment of the trial court will be affirmed. Rule 440, Texas Rules of Civil Procedure.

## ON NOT FILING REMITTITUR

Remittitur has not been made by appellee as provided in the order of this court entered August 29, 1974; therefore, the cause is reversed and remanded for further proceedings consistent with this court's opinion.