# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00301-CV

**Gregory Daniels, Appellant**

**v.**

**Wells Branch Municipal Utility District, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT
## NO. D-1-GV-06-000452, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Gregory Daniels appeals from a judgment rendered against him in favor of Wells Branch Municipal Utility District ("Wells Branch") in its suit asserting causes of action for trespass and violation of its rules arising out of Daniels's entry upon and damage to its real property. In three issues, Daniels challenges the award of damages and attorneys' fees. We will affirm the district court's judgment.

## *Background*[1]

Wells Branch owns an undeveloped tract of land in Travis County ("Lot 54") that is primarily used for drainage of surface water runoff. Pursuant to section 54.205 of the water code, Wells Branch adopted an Order Establishing Rules and Usage Charges for District Facilities ("the District's Rules"), which govern the use of any land or easement owned or controlled by Wells

---

[1] The facts summarized in this section are taken from unchallenged findings of the district court.

Branch. *See* Tex. Water Code Ann. § 54.205 (West 2002). The District's Rules provide that no destructive activities are permitted on unimproved greenbelt areas owned by Wells Branch. Lot 54 is such an unimproved greenbelt area. Daniels is the owner or manager of property adjacent to Lot 54. On or before February 1, 2006, Daniels entered Lot 54 with a front-end loader or similar type of construction equipment without Wells Branch's knowledge or consent, damaged the lot's topography and landscaping, and damaged a bordering wooden privacy fence.

The district court found that Daniels's unauthorized entrance on Lot 54 was a violation of the District Rules prohibiting destructive activities on greenbelt areas, and assessed a $5,000 fine. *See id.* § 49.004 (West 2008). The district court also found that Wells Branch "incurred actual damages to [Lot 54] in the amount of $4,189.97," and that Wells Branch was entitled to recover its attorneys' fees, expert witness fees, and costs. The district court rendered a final judgment awarding Wells Branch $5,000 in civil fines; $4,189.97 in actual damages; and $14,029.00 in attorneys' fees. The district court also granted injunctive relief in favor of Wells Branch. In two issues, Daniels challenges the amount of actual damages awarded. In his third issue, Daniels contends that the district court erred by awarding attorneys' fees because Wells Branch failed to segregate fees between its cause of action for violation of the District Rules and its trespass claim. *See id.* (permitting recovery of reasonable attorneys' fees, expert witness fees, and other costs incurred in action to enforce district's rules).

***Actual Damages***

Wells Branch contended that Daniels damaged Lot 54 by using heavy equipment to push dirt into a large pile on the property and in the process damaged a portion of a privacy fence

2

bordering Lot 54. As actual damages, Wells Branch sought to recover the amount of money it spent to remove the dirt Daniels piled on Lot 54 and to repair the damaged fence. Donovan Williams, a Wells Branch district manager, testified that Wells Branch paid: (i) $1,960 to its staff members for their labor removing the dirt, removing the damaged fence, and erecting new fencing; (ii) $355.80 to Sun State Equipment for backhoe rental; (iii) $1,260 to Dentler Trucking for hauling dirt from Lot 54; and (iv) $614.17 to Home Depot for materials and hardware necessary to repair the fence. The district court awarded Wells Branch the sum of these expenses—$4,189.97—as actual damages.

In his first issue, Daniels contends that the district court abused its discretion by compensating Wells Branch for its out-of-pocket costs associated with repairing the fence Daniels damaged while trespassing on Lot 54. Daniels asserts that the fence, as repaired, is "of better value than what was destroyed" because it includes three metal support posts (the original fence used wood posts), and the replacement pickets are "fresh, ungrayed yellow-wood color, and not rotten" whereas the portion of the fence he damaged was "grayed, with wooden posts, and rotten in some areas." Daniels asserts that the district court abused its discretion by compensating Wells Branch for its repair costs because the fence, after the repairs, is "new, stronger, more-improved" and thus more valuable than the original fence.

Although Daniels contends that the repair costs were excessive because Wells Branch built a "new and improved" fence, the evidence presented at trial shows that Wells Branch replaced the damaged fence with a new fence of substantially the same construction. The record includes a photograph of the repaired fence. The wooden fence pickets used for the repair are the same size and appearance as those in the original fence, except that they are not weathered. The repaired

3

portion of the fence is of the same construction as the original portion fence except that instead of using wooden support posts, Wells Branch used metal posts. There was no evidence offered at trial to indicate that the metal posts were more expensive than wooden posts would have been, or that the fence as repaired was of substantially better construction than the original fence. The trial court could properly consider, and award as compensatory damages, the cost to Wells Branch of replacing the damaged portion of the fence with a new fence of substantially the same construction. *See Jackson v. Wallis*, 514 S.W.2d 335, 338 (Tex. Civ. App.—Houston [1st Dist.] 1974, no writ); *see also Torrington Co. v. Stutzman*, 46 S.W.3d 829, 848 (Tex. 2000) (primary purpose of awarding compensatory damages in civil action is to fairly compensate plaintiff).

Daniels also challenges the trial court's award of damages to compensate Wells Branch for the money spent hauling the dirt pile from Lot 54. In his second issue, Daniels complains that the evidence is legally insufficient to support the award because Williams's testimony regarding the amount of dirt hauled away was "speculative" and "incompetent to prove damages." As part of his first issue, Daniels asserts that the district court abused its discretion by awarding "damages for [hauling more dirt] than was visibly present" on the property.

The damage award includes $1,260 for dirt hauling. Williams testified that Wells Branch paid a trucking company $1,260 to haul dirt from Lot 54, and that Wells Branch competitively bid this service and the rate was "better than most." There was no evidence presented at trial tending to show that Wells Branch did not actually incur this expense, or that it was unreasonable. The damages awarded to compensate Wells Branch for hauling dirt from the lot was not based on an estimate of how much dirt was removed from Lot 54, but on evidence of what Wells

4

Branch actually paid the trucking company. There is legally sufficient evidence to support an award of $1,260 for the cost of hauling dirt from Lot 54, and the district court did not abuse its discretion by including this in its award of actual damages. We overrule Daniels's first and second issues.

**Attorneys' Fees**

In his third issue, Daniels argues that the district court erred in awarding attorneys' fees to Wells Branch. The district court awarded $14,029 for preparation and trial; $7,500 for an appeal to the court of appeals; $7,500 in the event a petition for review is filed with the Texas Supreme Court and is denied; and an additional $7,500 in the event the petition for review is granted but the Texas Supreme Court does not reverse or vacate the trial court's judgment. Daniels contends that, while Wells Branch was entitled to recover reasonable attorneys' fees and costs associated with its suit to enforce its rules, *see* Tex. Water Code Ann. § 49.004, it was not entitled to recover fees for its claim of trespass. Daniels argues that the award of attorneys' fees is an abuse of discretion because Wells Branch failed to segregate its fees.

Fee claimants are required to segregate fees between claims for which they are recoverable and claims for which they are not. *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006). However, if a party does not object to the fact that the attorneys' fees are not segregated as to specific claims, then the objection is waived. *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997). Although counsel for Wells Branch did not segregate the fees between the suit to enforce its rules and the trespass claim, Daniels did not object to the testimony. Nor did Daniels complain about the award of attorneys' fees in his post-judgment motion requesting a new trial. Therefore, Daniels waived any error in the district court's failure to require Wells Branch to

5

segregate its attorneys' fees, and any such error cannot serve as a basis for barring Wells Branch's recovery of attorneys' fees. *See id.* at 389-90. Consequently, we need not address Wells Branch's argument that there was no way to segregate the fees because the facts supporting each of the claims were intertwined. *See Tony Gullo Motors*, 212 S.W.3d at 313-14. We overrule Daniels's third issue.

### *Conclusion*

Having overruled Daniels's three appellate issues, we affirm the district court's judgment.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: November 5, 2010