## N. McMillan and her Husband v. M. E. Warner et al.

1. Where there is an abandonment of the homestead, with a fixed intention not to return, the property may be subjected to the demand of creditors; and it is error to instruct the jury that proof of acquisition of a new homestead is alone conclusive evidence of the abandonment of the old.

2. The question of abandonment is almost exclusively a question of intent, and that intent must be clearly established by the best accessible evidence, before a jury will be authorized in finding a relinquishment of any rights under the homestead laws; that a party has been absent for an indefinite period, is not sufficient to establish the fact of abandonment, unless accompanied with proof of intent not to return.

3. The declarations of a party before, at the time of, and after leaving his home, may be given in evidence to establish the intent; but the sworn statement of the party himself, taken in a court of justice, if credible, must settle the question, for he alone has full knowledge of that intent.

4. The act of May 19, 1871, repeals the common law rule heretofore in force

in this State, as to the disqualification of witnesses on account of interets, and, with one exception, removed all legal objections to their admissibility on account of interest in the issue tried.

Appeal from Walker. Tried below before the Hon. J. R. Burnett.

The appellee, Mrs. Warner (then Shannon), with her then husband, D. W. Shannon, occupied the house and lot in controversy, as their homestead, in January, 1859, at which time Shannon abandoned his wife, and left for parts unknown. She continued to reside at the house until the spring of 1861, when she removed to Houston, Texas, where she pursued the occupation of a milliner, having rented the house to a tenant, and employed an agent to collect the rents that should become due thereon.

The appellant, James McMillan, obtained a judgment against D. W. Shannon, on the twenty-seventh of July, 1861, for $65.89, and the house and lot were sold under execution, to satisfy this judgment, on the third of September, 1861, for the amount of the judgment and costs, to Nancy McMillan, appellant and wife of the plaintiff in execution. F. D. Thornton, the agent of Mrs. Warner, attended the sale, and claimed the premises sold as the homestead of his principal.

On the thirtieth of September, 1861, McMillan and wife brought an action of trespass to try title against Mrs. Warner's tenant, claiming title under the sheriff's sale, which action she defended, claiming the house and lot as her homestead, and judgment was rendered in her favor on the twenty-ninth of October, 1862.

The appellees intermarried in January, 1870. On the seventeenth of March, 1871, McMillan and wife brought their second action of trespass to try title, to which appellees objected, on the ground that the second suit was not brought within one year after the conclusion of the first action, which objection, being sustained by the Dis-

trict Court, was considered by this court at its last term, in the case of McMillan v. Warner, which was reversed and remanded.

On August 1, 1872, verdict and judgment were again rendered in favor of Mrs. Warner, from which judgment McMillan and wife prosecute their appeal to this court.

*L. B. Hightower,* for appellants.

*Randolph & McKinney,* for appellees.

OGDEN, J.—Section 1 of an act of the Legislature, approved May 19, 1871, provides "that in the courts of this State there shall be no exclusion of any witness on account of color; nor in civil actions because he is a party to, or interested in, the issue tried." This statute, by implication, repeals the common law rule heretofore in force in this State in regard to the disqualifications of witnesses on account of interest; and in civil actions, excepting in one instance, has entirely removed all legal objections to the admissibility of evidence on account of any pecuniary interest of the witness testifying, or because he is a party in or to the issue tried, thus admitting to the witness stand a large class of persons heretofore shut out, and leaving them to stand exclusively upon their credibility, and their statements to be weighed and determined by the amount of conviction they may produce. The statute is very emphatic, and when it says "there shall be no exclusion of any witness," it certainly comprehends not only the person, but also the manner of testifying, whether it be orally or by deposition, and declares, in effect, that parties to a suit and parties having a pecuniary interest in the same shall hereafter stand on the same footing as all other and disinterested witnesses. The court therefore did not err in admitting in evidence the depositions of Mrs. M. E. Warner, though a party to the suit.

There is, however, an error in the charge of the court which must be regarded as fatal to the judgment below. The jury were instructed in an additional charge as follows: "If you find that the property sued for was the homestead of the defendant, M. E. Warner, previous to the sale by the sheriff, then you will find for the defendants, unless the proof shows that at the date of said sale the defendant, M. E. Warner, had then acquired a new homestead."

This instruction declares in effect that no evidence, however strong and conclusive, is sufficient to establish the fact of an abandonment of one homestead but the proof of the acquisition of another; or, in other words, that it is impossible for a person to abandon a homestead by any act of the will or purpose, but that the same may cling to him through life, unless relieved from a possibly unwelcome incumbrance by alienation, or the acquisition of a new one. We think this is not the law, as enunciated in repeated decisions of this court. In the case of Trawick v. Harris (8 Texas, 310), the surviving wife had become a citizen of the State of Georgia, and the court says: "If so, she is as completely deprived of the homestead privilege as if she had acquired a new homestead in this State." In the case of Shepherd v. Cassiday (20 Texas), Hemphill, C. J., in delivering the opinion of the court, says: "We do not intend to assert the proposition that the old homestead remains until a new one is gained. This would, perhaps, too much embarrass and obscure the condition and rights of property to receive judicial sanction, there being no law or statute to that effect." And in the case of Gouhenant v. Cockrell (20 Texas, 98), the same learned judge says a homestead may be abandoned and disrobed of its guarantees, and the best evidence of this is that a new and permanent one has been acquired; but, he says, "we have held that less evidence

may be sufficient, and that where there is abandonment with a fixed intention not to return, the property may be opened to creditors.'' The same doctrine is held in Cox v. Shropshire (25 Texas, 123), in which it is said the abandonment had been established, ''independently of the deed.'' These and other cases deciding the same point, we think have settled the question that a homestead may be abandoned without the acquisition of another.

The charge of the court is therefore erroneous; and if that error entered into the verdict of the jury, the cause should be reversed, that the jury may have the benefit of a legal charge upon this interesting question.

There is some conflict in the testimony in regard to the question of abandonment, which should have been considered by the jury under proper instructions; as upon the proper determination of that question hangs the decision of the entire merits of this case. The question of abandonment is almost exclusively a question of intent, since no legal abandonment can occur without a fixed intent to renounce and forsake, or to leave never to return; and to abandon a homestead a party must forsake and leave it with the intent never to return to it again as a homestead. Property may be abandoned as a homestead and still be held and occupied for other purposes, stripped of all the peculiarities or privileges which surround it as a homestead, and become subject to the demands of creditors.

But the intent to abandon must be clearly established by proof, before a jury would be authorized to find a relinquishment of any rights under the homestead laws, and that intent should be proven by the best accessible evidence. That a party has left his home and been absent for an indefinite period, would of itself be no sufficient evidence to establish the fact of abandonment, but such fact must be accompanied with the further proof

of the intent not to return.   How that intent is to be established must depend to a great extent upon the circumstances and facts surrounding each case.   The declarations of a party before, at the time of, and after leaving his home, may be given in evidence to establish the intent. But the sworn statements of the party himself, taken in a court of justice, if credible, must settle the question, for he alone has full knowledge of that intent, and his statements as to that intent can be directly contradicted by no human testimony.   It is true that the testimony of a witness may be discredited to some extent by proof of contrary statements when not under oath, but such proof by no means impeaches or disproves his sworn testimony.   A person when not under oath, and under the influence of passion, prejudice or any other exciting cause, may sometimes indulge in inconsiderate language not strictly true, but it is supposed that the sanctity of an oath will outweigh all exciting causes and awaken the conscience into speaking the truth ; and when such testimony is given of the intent and purposes of the mind of the witness, it can be disproved only by clearly establishing the falsity of such testimony.   But when a witness has been thoroughly impeached, or when his testimony has been clearly discredited or contradicted, in such a case his testimony as to the purposes of his mind should have but little weight with a court or jury.

There is another question raised by the record in this case which requires a brief notice here.   The property now in controversy was sold under the McMillan judgment in September, 1861, and if up to that time Mrs. Shannon had not abandoned it as a homestead, then it was not subject to the execution sale, and the purchaser acquired no title.   It therefore becomes important that the proof of abandonment should be confined to a period anterior to the day of sale.   Mrs. Shannon or Warner may have

determined to abandon the property as a homestead since the sale to McMillan. If so, it may now be liable to seizure and sale ; but this fact could in no manner affect the title of appellant, as all her rights under her deed must date from the day of sale. It was therefore error in allowing proof of an abandonment since the sheriff's sale.

The judgment is reversed and the cause remanded.

REVERSED AND REMANDED.