## No. 5695.

### KING & DAVIDSON ET AL. v. MRS. S. E. HARTER.

1. HOMESTEAD.—No distinction can be made, so far as homestead rights
   are concerned, between the urban family residence and the place owned
   and occupied for business by the head of the family, and when the
   homestead right attaches to either it can only be lost by a voluntary
   abandonment. The fact that the business carried on in a house pro-
   tected by the homestead laws is carried on in the name of another, if
   really conducted for the benefit of the family, is immaterial, nor is it
   material that such business is conducted in fraud of creditors.

APPEAL from Clay. Tried below before the Hon. B. F. Wil-
liams.

*Chesnutt & Welborne*, for appellants, cited Shryock & Row-
land v. Latimer et al., 57 Texas, 674; McDonald v. Campbell,
57 Texas, 614; Ball, Hutchings & Co. v. Lowell, 56 Texas, 579;
Miller v. Menke, 56 Texas, 563.

*Swan & Bomar*, for appellee: The husband's place of busi-
ness, at the time of his death, descends absolutely to his
wife and minor children, free from all debts of the husband.
(Clift v. Kauffmann, 60 Texas, 64.)

When homestead rights have once attached, they continue
until abandoned, and such abandonment must be both inten-
tional and voluntary. (Clint v. Upton, 56 Texas, 320; Shepard
v. Casady, 20 Texas, 24; Gouhenant v. Cockrell, 20 Texas, 96;
Thompson on Homestead, latter part, sections 284, 285.)

ACKER, JUDGE. John Harter owned a residence and lots, and
a business house and lot, in the town of Henrietta. He and
his family occupied the residence as their home, and he carried
on the business of retail liquor dealer in the business house.
Harter was indebted to various persons, including appellants.
On the twenty-eighth of October, 1883, one of his creditors

sued out an attachment, and caused it to be levied upon his bar fixtures and billiard tables. The next day other attachments were levied upon all other personal property in the saloon business. On November 2, 1883, LeGierse & Co. brought suit by attachment in the county court, and caused their writ to be levied upon the saloon building and lot. The only property owned by Harter which was not attached by his creditors was the residence, two cows and calves, and household and kitchen furniture. Judgment was rendered in the LeGierse & Co. suit on the ninth day of January, 1884, foreclosing the attachment lien on the business house and lot. King & Davidson recovered judgment on their claim in the justice's court on the twenty-eighth day of November, 1883, on which execution was issued and levied on the business house and lot on the same day that an order of sale was issued on the judgment in favor of LeGierse & Co. No sale was made under either the execution or order of sale, because of Harter's death, which occurred on the twenty-ninth of January, 1884. About ten days after the saloon business was closed by levy of the attachments, Harter resumed business in the building in the name of A. P. Weaver, and the business was continued in Weaver's name until after Harter's death. Appellee, as widow of Harter and administratrix of his estate, made application to the probate court to set apart the business house and lot as a part of the homestead of herself and minor children. Appellants contested the application, upon the ground that by closing the business by levy of attachment was an abandonment of the property for homestead purposes, and their levies having been made while the business was closed, and the property not being used for homestead purposes, they acquired liens by their levies superior to appellee's homestead claim. The probate court made an order setting the property apart as part of the homestead; from which appellants appealed to the district court, where another trial was had with the same result. Appellants rely upon these points for reversal of the judgment.

It is contended: First. That closing the business by the levy of the writs of attachment operated as such abandonment of the use of the property as made it subject to sale for the payment of debts. Second. If the levy of the attachments and consequent suspension of the business did not work an aban-

donment of the homestead character of the property, then the fraudulent conduct of Harter and appellee, in permitting the business to be resumed and conducted in the name of Weaver, estops appellee from asserting her homestead claim.   Third. The ruling of the court in sustaining an objection to a question asked appellee on cross examination.

Property used by the head of the family for carrying on the business he pursues for the support of his family is just as much a part of the urban homestead as the urban residence, and when the homestead character attaches it continues until voluntarily abandoned.   The residence is accorded the protection of the homestead laws because of being the place of the home of the family, and the business house is protected because of its occupation and use for the purpose of carrying on the business or calling of the head of the family.   To be an abandonment that would subject such property to seizure and sale, there must be a voluntary leaving or quitting of the residence with a then present intent to occupy it no more as a home, and to subject the business property to such liability there must be a voluntary closing of the business for which it was used by the head of the family in pursuit of his calling.   (Clift v. Kauffmann, 60 Texas, 64; Clint v. Upton, 56 Texas, 320; Griffith v. Maxey, 58 Texas, 214.)   Being Harter's place of business at the time of his death, we think it immaterial that the business was conducted in the name of another.   We think the homestead claim is fully sustained by the evidence given upon the trial, and that there was a total failure to prove abandonment.

Conceding there was fraud on the part of Harter in resuming and conducting the business in the name of Weaver we can not see how that could be made to operate as an estoppel against appellee's homestead claim.   The property being homestead, and protected against creditors, could not be the subject of fraudulent dealing as to creditors.   (Blum v. Beard, 64 Texas, 59.)   We discover none of the elements of the doctrine of estoppel in this case.   Whatever rights appellants had remained unchanged by reason of the business being resumed and carried on in the name of Weaver.   (Blum v. Merchant, 58 Texas, 400.)   A satisfactory reason is given for carrying on the business in the name of Weaver.   Harter had to obtain his stock of goods on a credit.   Those who furnished him with the goods required that the business should be so conducted to protect it against the demands of Harter's other creditors.

On the trial appellee testified as a witness in her own behalf. On cross examination she was asked by counsel for appellants "if she made any objection to the business being carried on in the name of Weaver," to which counsel for appellee objected upon the ground that the testimony sought to be elicited was irrelevant and immaterial. During the lifetime of the husband he had the right to control and manage the property, and it was wholly immaterial in determining the rights of herself and children in the property after his death whether or not the wife objected to the use which was made of the property by the husband.

The only other assignment of error insisted upon is: "The court erred in each and every paragraph of his charge, and said charge was not applicable to and warranted by the evidence, nor is said charge authorized by the law when applied to the facts of this case."

That this assignment is too general to require consideration is too plain to demand discussion. (Rules Supreme Court, 24 and 25.)

We are of opinion that the judgment of the court below should be affirmed.

*Affirmed.*