Virgil A. PIERCE, Appellant,

v.

**WASHINGTON MUTUAL BANK, Appellee.**

No. 12–06–00396–CV.

Court of Appeals of Texas, Tyler.

May 23, 2007.

Rehearing Overruled June 18, 2007.

Richard L. Ray, Canton, Joel C. Elliott, for appellant.

Eugene Z. Dubose, Law Office of Eugene Z. Dubose, P.C., Dallas, for appellee.

Panel consisted of WORTHEN, C.J. and GRIFFITH, J.

## OPINION

SAM GRIFFITH, Justice.

Virgil A. Pierce sued Washington Mutual Bank (the "Bank") to remove a cloud on the title of his current home, claiming that home as his homestead. The Bank moved for traditional summary judgment, which was granted. In one issue, Pierce argues that a genuine issue of material fact existed in the case and, therefore, the trial court improperly granted summary judgment. We reverse and remand for further proceedings.

### BACKGROUND

On March 8, 2005, Pierce filed a lawsuit against the Bank to remove a cloud on the title of his current home at 501 East Dallas in Canton, Texas (the "Canton property"). According to Pierce, the Bank had filed an abstract of judgment in Van Zandt County, the county in which the Canton property was situated, creating a constitutionally impermissible cloud on his title to his homestead. The Bank filed a general denial, and later filed a counterclaim seeking foreclosure of its lien on the Canton property.

During the course of discovery, the Bank propounded interrogatories to Pierce. Pierce's answer to Interrogatory No. 5 is as follows:

5. Identify by address and legal description every homestead you have had since January 1, 1990, to the present, giving the dates between

which you claimed each such homestead....

ANSWER: 02–98 to 03–18–02—3914 Mediterranean, Rockwall, TX 75087

03–02 to present—501E. Dallas, Canton, TX 75103[.]

The Bank, upon receiving this answer, moved for traditional summary judgment on Pierce's claim and on its counterclaim. As summary judgment evidence, the Bank submitted to the trial court evidence that it had filed its abstract of judgment in Van Zandt County on October 13, 2000 and Pierce's answer to Interrogatory No. 5. According to Pierce's interrogatory answer, he had claimed as his homestead the property at 3914 Mediterranean in Rockwall, Texas (the "Rockwall property") on the date the Bank filed its abstract of judgment. The Bank asserted in its motion for summary judgment that Pierce's answer to Interrogatory No. 5 proved that the Rockwall property was Pierce's homestead and that he had claimed it as such from February 1998 to March 2002. Therefore, according to the Bank, this proved that the Canton property was not Pierce's homestead on the date the abstract of judgment was filed. Consequently, the Bank urged, Pierce was not entitled to the protection of the Texas homestead laws.

In his response to the Bank's motion for summary judgment, Pierce alleged that a genuine issue of material fact existed regarding whether the Canton property was his homestead at the time the abstract of judgment was filed. Pierce attached an affidavit in which he swore as follows:

1. That the real property [referred to as the Canton property] has been my home since December, 1992.

2. That during any period of time when I did not reside at the [Canton property], it was temporary in nature, and it was always my intention to return to my home.

3. That I have never abandoned the [Canton property] as my home.

4. That I have, at times since purchase, made improvements to the [Canton property], maintained the property and used the property.

....

7. That the proceeds from the [Canton property] would be proceeds from the sale of my homestead.

According to Pierce, this affidavit constituted evidence showing that a material fact issue existed.

The trial court granted summary judgment in favor of the Bank on all claims. Pierce filed a motion for new trial, which was overruled by operation of law. This appeal followed.

### SUMMARY JUDGMENT EVIDENCE

In his sole issue, Pierce alleges that a genuine issue of material fact existed regarding whether the Canton property was his homestead on October 13, 2000, the date the Bank filed its abstract of judgment in Van Zandt County. Therefore, according to Pierce, the trial court erred by granting summary judgment.

### Standard of Review

For a party to prevail on a traditional motion for summary judgment, it must conclusively establish the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX.R. CIV. P. 166a(c). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *See Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548–49 (Tex.1985). Further, every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *See id.*

Since the burden of proof is on the movant, and all doubts about the existence of a genuine issue of material fact are resolved against the movant, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *See Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965).

In an appeal of summary judgment, our review is a limited one. A movant's motion for summary judgment must itself expressly present the grounds upon which it is made. *McConnell v. Southside Indep. Sch. Dist.,* 858 S.W.2d 337, 341 (Tex.1993). The motion must stand or fall on the grounds expressly presented therein. *Id.* In determining whether grounds are expressly presented, reliance may not be placed on briefs or summary judgment evidence. *Id.*

A fact is "material" if it affects the ultimate outcome of the suit under the governing law. *Rayon v. Energy Specialties, Inc.,* 121 S.W.3d 7, 11 (Tex.App.-Fort Worth 2002, no pet.) (citing *Lampasas v. Spring Ctr., Inc.,* 988 S.W.2d 428, 433 (Tex.App.-Houston [14th Dist.] 1999, no pet.)). A material fact issue is "genuine" if the evidence is such that a reasonable jury could find the fact in favor of the nonmoving party. *Id.* at 11–12 (citing *Lampasas,* 988 S.W.2d at 433). Once the movant has established a right to summary judgment, the nonmovant has the burden to respond to the motion for summary judgment and present to the trial court any issues that would preclude summary judgment. *See, e.g., City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678–79 (Tex.1979).

### Texas Homestead Law

■ Homestead laws are a uniquely American institution, having their origins in the "great debtor revolution of the era of 'Jacksonian Democracy.…'" *Estate of Johnson v. Comm'r,* 718 F.2d 1303, 1307

(5th Cir.1983). These laws sought to afford protection to the family by protecting the family home from creditors. *See id.* The broad purpose of these laws was to protect the family from dependence and pauperism. *Id.* Further, "[h]omestead laws are not only based upon a tender regard for the welfare of the citizen, but have for their object the stability and welfare of the state." *Andrews v. Sec. Nat'l Bank of Wichita Falls,* 121 Tex. 409, 417, 50 S.W.2d 253, 256 (1932).

■ Texas has a "strong pro-homestead tradition [that] pre-dates statehood, and the Republic of Texas was determined to protect homesteads from creditors." *Norris v. Thomas,* 215 S.W.3d 851, 854 (Tex.2007). Under current Texas law, the homestead interest is a legal interest created by the Texas Constitution that provides prophylactic protection from all liens not specifically delineated therein. *See* TEX. CONST. art. XVI, § 50. "We construe homestead laws generously; however, courts cannot unduly stretch the homestead laws beyond their constitutional and statutory moorings and protect that which is not a homestead." *Norris,* 215 S.W.3d at 853 (internal citations omitted). Whether property is a homestead presents a fact question. *Brown v. Bank of Galveston, Nat'l Ass'n,* 963 S.W.2d 511, 515 (Tex. 1998).

Neither the Texas Constitution nor the Texas Property Code defines "homestead" with specificity. *Norris,* 215 S.W.3d at 853. The constitution restricts the maximum size of a protected homestead, limiting rural and urban homesteads by acres of land together with any improvements on the land. TEX. CONST. art. XVI, § 51. It also describes a homestead as "a home, or as both … [a] home and a place to exercise a calling or business." *Id.* The property code similarly describes a homestead as a home or a home and a business, with

certain acreage limitations, including the "improvements thereon." TEX. PROP.CODE. ANN. § 41.002 (Vernon 2000).

The Texas Supreme Court has defined "homestead" to be "the place of the house," "the mansion house, with adjoining land." *Houston & Great N. R.R. Co. v. Winter,* 44 Tex. 597, 610 (1876). It has also stated that a homestead interest is available only where the land is used as a "home." *Pearson v. Felps,* 53 S.W.2d 495, 496 (Tex.Civ.App.-Dallas 1932, writ ref'd); *see Cullers v. James,* 66 Tex. 494, 498, 1 S.W. 314, 315 (1886). More recently, this court has stated that

> [a] homestead is the dwelling house constituting the family residence, together with the land on which it is situated and the appurtenances connected therewith. *Gann v. Montgomery,* 210 S.W.2d 255, 258 (Tex.Civ.App.-Fort Worth 1948, writ ref'd n.r.e.). The possession and use of real estate by one who owns it, and who, with his family, resides upon it makes it the homestead of the family in law and in fact. *Garrard v. Henderson,* 209 S.W.2d 225, 230 (Tex.Civ.App.-Dallas 1948, no writ)....

*Tolman v. Overstreet,* 590 S.W.2d 635, 637 (Tex.Civ.App.-Tyler 1979, no writ). Finally, it has been held that a homestead may also be established upon unoccupied land if the owner intends to occupy and use the premises within a reasonable and definite time in the future, and has made such preparations toward actual occupancy that "are of such a character and have proceeded to such an extent as to manifest beyond a doubt the intention to complete the improvements and reside upon the place as a home." *Farrington v. First Nat'l Bank of Bellville,* 753 S.W.2d 248, 250 (Tex.App.-Houston [1st Dist.] 1988, writ denied) (quoting *Lilly v. Lewis,* 249 S.W. 1095, 1096 (Tex.Civ.App.-San Antonio 1923, no writ)).

■ A person is not entitled to two homesteads at the same time. *Silvers v. Welch,* 127 Tex. 58, 62, 91 S.W.2d 686, 687 (1936); *see also* TEX. CONST. art. XVI, § 50. When a person establishes a new homestead, he abandons his old homestead, if any, as a matter of law. *See Silvers,* 127 Tex. at 62, 91 S.W.2d at 687–88. Further, a person may abandon his homestead even without fully establishing a new one. Where abandonment is not based upon a finding that a new homestead has been established, the issue of abandonment is fact question. *See Kendall Builders, Inc. v. Chesson,* 149 S.W.3d 796, 807–08 (Tex.App.-Austin 2004, pet. denied).

■ Where a homestead claimant moves from property that has been previously impressed with homestead character, the question of whether such property continues as a homestead is dependent primarily upon the intention of the claimant. *West v. Austin Nat'l Bank,* 427 S.W.2d 906, 911–12 (Tex.Civ.App.-San Antonio 1968, writ ref'd n.r.e.) (citing *McMillan v. Warner,* 38 Tex. 410, 411 (1873)). "One does not necessarily abandon a homestead merely by changing residence." *Chesson,* 149 S.W.3d at 808 (citing *Rancho Oil Co. v. Powell,* 142 Tex. 63, [69,] 175 S.W.2d 960, 963 (1943)). "To be an abandonment that would subject such property to seizure and sale, there must be a voluntary leaving or quitting of the residence with a then present intent to occupy it no more as a home...." *King v. Harter,* 70 Tex. 579, 581, 8 S.W. 308, 309 (1888). "[O]ur courts have held that 'it must be undeniably clear and beyond almost the shadow, at least [of] all reasonable ground of dispute, that there has been a total abandonment with an intention not to return and claim the exemption.'" *Burkhardt v. Lieberman,* 138 Tex. 409, 416, 159 S.W.2d 847, 852

(1942) (quoting *Gouhenant v. Cockrell,* 20 Tex. 96, 98 (1857)).

### The Summary Judgment Evidence

To show that it was entitled to summary judgment, the Bank had the burden to conclusively establish the absence of any genuine issue of material fact and that it was entitled to judgment as a matter of law. *See* TEX.R. CIV. P. 166a(c). If its abstract of judgment was filed during a time in which the Canton property was Pierce's homestead, the Canton property was protected from the Bank's lien. *See* TEX. CONST. art. XVI, § 50. Further, the fact that Pierce may have acquired a different homestead after that date would not affect the Canton property's protection from the lien. *See Laster v. First Huntsville Props. Co.,* 826 S.W.2d 125, 130 (Tex. 1991) ("A mortgage or lien that is void because it was illegally levied against homestead property can never have any effect, even after the property is no longer impressed with the homestead character."). However, if the Canton property was not Pierce's homestead on that date, it was not protected and the Bank's lien could be foreclosed. *See Inwood N. Homeowners' Ass'n, Inc. v. Harris,* 736 S.W.2d 632, 635 (Tex.1987). Therefore, the question of whether the Canton property was Pierce's homestead on the date the abstract of judgment was filed in Van Zandt County affected the ultimate outcome of this suit under the governing law and was, thus, "material." *See Rayon,* 121 S.W.3d at 11. Because the issue of homestead was both a fact question and "material," it was the Bank's burden to establish that it was not a "genuine" issue in this suit. *See* TEX.R. CIV. P. 166a(c).

▮▮ The Bank argues that Pierce's affidavit was not sufficient to controvert his interrogatory answer because the affidavit used the word "home" and not "homestead" in all but one pertinent sentence. We disagree. Pierce's affidavit contained all of the elements necessary to establish that the Canton property was his homestead on the date that the abstract of judgment was filed, thus contradicting any opposing inferences that could be made from his interrogatory answer. *See Pearson,* 53 S.W.2d at 496; *Tolman,* 590 S.W.2d at 637. Likewise, his affidavit contradicted any inferences regarding the establishment of the Rockwall property as his new homestead and the abandonment of the old one at the Canton property. *See Silvers,* 127 Tex. at 62, 91 S.W.2d at 687–88; *King,* 70 Tex. at 581, 8 S.W. at 309. Therefore, the trial court was presented with a situation where conflicting inferences could be drawn from Pierce's interrogatory answer and his affidavit.[1]

The supreme court has addressed a similar situation in the context of affidavits that conflict with previous deposition testimony. In one such case, the supreme court stated that it is a

> ... well-established rule that a deposition does not have controlling effect over an affidavit in determining whether a motion for summary judgment should be granted. *Gaines v. Hamman,* 163 Tex. 618, [626,] 358 S.W.2d 557, 562 (1962). Thus, if conflicting inferences may be drawn from a deposition and from an affidavit filed by the same party in opposition to a motion for summary judgment, a fact issue is presented. *Gaines,* [163 Tex. at 626,] 358 S.W.2d at 562.

*Randall v. Dallas Power & Light Co.,* 752 S.W.2d 4, 5 (Tex.1988). Similarly, this court has stated that "[f]actual conflicts existing between the non-movant's own de-

---

1. We do not address the issue of whether the Bank brought forth sufficient summary judg-ment evidence to shift the burden to Pierce to present evidence in response.

position and affidavit must be resolved in the non-movant's favor." *Hassell v. Mo. Pac. R.R. Co.*, 880 S.W.2d 39, 41 n. 1 (Tex.App.-Tyler 1994, writ denied) (citing *Randall*, 752 S.W.2d at 5). The logic of these cases is sufficiently analogous to this case to dictate the same result. Because conflicting inferences could be drawn from Pierce's interrogatory answer and his affidavit, a genuine issue of material fact existed. *See Randall*, 752 S.W.2d at 5; *Gaines*, 163 Tex. at 626, 358 S.W.2d at 562; *Hassell*, 880 S.W.2d at 41 n. 1. As such, the trial court erred when it granted summary judgment. *See Great Am. Reserve Ins. Co.*, 391 S.W.2d at 47.

The dissent relies upon the 1936 Texas Commission of Appeals opinion in *Silvers v. Welch*, 127 Tex. 58, 91 S.W.2d 686,[2] which is distinguishable from the case before us. In *Silvers*, the trial court conducted a bench trial and made a finding of fact on the abandonment of homestead issue. *See id.*, 127 Tex. at 61–62, 91 S.W.2d at 687. The commission correctly stated the law of Texas then and as it remains today: that abandonment of a homestead is largely a question of intention. *See id.*, 127 Tex. at 62, 91 S.W.2d at 688. The mere fact that a person has acquired and moved onto another piece of property does not conclude the issue of abandonment. *Id.* However, the commission ultimately decided that it was precluded from considering the homestead abandonment issue. *See id.*, 127 Tex. at 61, 91 S.W.2d at 687. It lamented that no statement of facts had been brought before it on appeal that would have shown whether the homestead abandonment issue had

been fully developed at trial. *See id.*, 127 Tex. at 63, 91 S.W.2d at 688. Thus, it was bound by the trial court's finding of fact.

Homestead protection is a treasured liberty in Texas, which has been encrusted in its constitution since 1839. *See* Henry B. Gonzales, *The Texas Homestead: The Last Bulwark of Liberty*, 26 St. Mary's L.J. 339, 341 (1995). Courts are most comfortable when the issue of homestead abandonment has been fully developed before a finder of fact. *See Silvers*, 127 Tex. at 62–63, 91 S.W.2d at 688. The constitutional considerations courts must make for the protection of Texas homesteads along with the presumptions we must apply in favor of the summary judgment nonmovant leave us no choice but to return the homestead abandonment issue to the trial court.

### *Sham Affidavits*

▇▇▇▇ The Bank also argues that Pierce's affidavit was a "sham affidavit," and, thus, could be properly disregarded by the trial court when making its ruling. Under the sham affidavit rule applied by some of our sister courts, a party cannot file an affidavit to contradict his own deposition testimony, without any explanation for the change in the testimony, for the purpose of creating a fact issue to avoid summary judgment.[3] *See, e.g., Farroux v. Denny's Rests., Inc.*, 962 S.W.2d 108, 111 (Tex.App.-Houston [1st Dist.] 1997, no pet.). However, we conclude that any inconsistency or conflict between a party's interrogatory answers and affidavit is not a reason to exclude that affidavit evidence in a summary judgment proceeding. *See Davis v. City of Grapevine*, 188 S.W.3d

---

**2.** This opinion has been adopted by the Texas Supreme Court.

**3.** While the limits of this rule have not been defined by Texas courts, the United States Ninth Circuit appears to have extended its version of the rule by stating that the rule

could apply to situations where a conflict exists between an affidavit submitted during summary judgment and a previous interrogatory answer. *School Dist. No. 1J, Multnomah Cty. v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir.1994).

748, 756 (Tex.App.-Fort Worth 2006, pet. denied); *Thompson v. City of Corsicana Hous. Auth.,* 57 S.W.3d 547, 556–58 (Tex. App.-Waco 2001, no pet.). Rather, these inconsistencies and conflicts create a fact issue that should be resolved by a jury. *See Randall,* 752 S.W.2d at 5; *Gaines,* 163 Tex. at 626, 358 S.W.2d at 562; *Hassell,* 880 S.W.2d at 41 n. 1. It is not the role of the trial court, at summary judgment, to evaluate the credibility of affiants or the weight of the showings. *Great Am. Reserve Ins. Co.,* 391 S.W.2d at 47. Therefore, the trial court had no authority to disregard Pierce's affidavit. *See Davis,* 188 S.W.3d at 756; *Thompson,* 57 S.W.3d at 556–58.

We sustain Pierce's sole issue.

### DISPOSITION

We *reverse* the trial court's order granting summary judgment and *remand* for further proceedings.

HOYLE, J., dissenting.

I respectfully dissent. Because Pierce's affidavit did not conflict with his interrogatory answers regarding the Rockwall property being his homestead for a time period including October 13, 2000, the trial court correctly determined that no genuine issue of material fact existed in the case. Therefore, the trial court properly granted summary judgment, and that judgment should be affirmed.

The Bank filed its abstract of judgment in Van Zandt County on October 13, 2000. Pierce claims that the judgment cannot attach to his Canton property solely because the Canton property is protected by Texas homestead laws. If the Canton property was not Pierce's homestead on October 13, 2000, the bank's lien can be foreclosed because the property cannot then be protected by Texas homestead laws. *See Inwood N. Homeowners' Ass'n,*

*Inc. v. Harris,* 736 S.W.2d 632, 635 (Tex. 1987) ("[W]hen the property has not become a homestead at the execution of the mortgage, deed of trust or other lien, the homestead protections have no application even if the property later becomes a homestead."). Thus, the potential material fact issue in this case is whether the Canton property could have been Pierce's homestead on October 13, 2000.

"We construe homestead laws generously; however, courts cannot unduly stretch the homestead laws beyond their constitutional and statutory moorings and protect that which is not a homestead." *Norris v. Thomas,* 215 S.W.3d 851, 853 (Tex.2007). A party cannot have two homesteads at the same time. *Silvers v. Welch,* 127 Tex. 58, 62, 91 S.W.2d 686, 687 (1936). A homestead can be abandoned. *Id.* If abandonment is not based upon a finding that a new homestead has been established, abandonment can be a fact question. *See Kendall Builders, Inc. v. Chesson,* 149 S.W.3d 796, 807–08 (Tex.App.-Austin 2004, pet. denied). But when a person establishes a new homestead, he abandons his old homestead as a matter of law. *See Silvers,* 127 Tex. at 62, 91 S.W.2d at 687–88. Therefore, even if the Canton property was Pierce's homestead at some point before October 13, 2000, the Bank still could show there was no fact issue about whether the Canton property was Pierce's homestead on October 13, 2000 by (1) proving abandonment as a matter of law through the various factors demonstrating intent to abandon or (2) proving abandonment because a new homestead was established. *See id.*

Here, the summary judgment evidence clearly proves Pierce had established a new homestead. In two separate interrogatory answers, Pierce identified his homestead as being the Rockwall property from February 1998 to March 2002. The major-

ity addresses his admission of the Rockwall property as his homestead in answer to Interrogatory No. 5. In answer to Interrogatory No. 14, Pierce confirmed that fact:

> 14. Have you ever resided in Rockwall County, Texas? If so, at what address did you reside and during what period of time[?] Have you ever owned real property in Rockwall County, Texas? If so, identify that property and the dates between which you owned that property. Did you ever declare your residence in Rockwall County to be your homestead? If so, when did you do that and when did that declaration of homestead cease? ...

ANSWER: Yes. 3914 Mediterranean, Rockwall, TX 75087—homestead 02–98 to 03–18–02.

Pierce further answered that the Canton property was his homestead from March 2002 to the present. In his brief to this court, Pierce explained his interrogatory answers: "As to each of the properties, Mr. Pierce stated the dates each was officially designated by record as a 'homestead,' rather than the dates that the properties qualified as his homesteads." These sworn statements have not been controverted.[4]

Instead, when confronted with the Bank's motion for summary judgment, Pierce stated that he believed he could have two homestead properties at the same time.[5] As evidence that the Canton property also was his homestead, he presented the court with an affidavit regarding his intended use of the Canton property, but he never specifically stated that the Canton property was his homestead on October 13, 2000. Further, that affidavit was silent as to whether the Rockwall property was his homestead on October 13, 2000. Obviously, he was wrong in his belief that the Rockwall property and the Canton property could be his homestead at the same time. Once he swore that his homestead had been the Rockwall property on October 13, 2000, the factors listed in his affidavit regarding intent as to the Canton property became immaterial. Once a new homestead is established, abandonment occurs as a matter of law. *See Silvers*, 127 Tex. at 62, 91 S.W.2d at 687–88. Thus, those factors listed in Pierce's affidavit can all be taken as true but they cannot make the Canton property an additional homestead. To bring the homestead nature of the Canton property into genuine issue, Pierce needed to swear that the Rockwall property was not his homestead on October 13, 2000. This he did not do.

In summary, the evidence shows that on the relevant date, Pierce's homestead was the Rockwall property. That evidence was not controverted. As such, the Bank demonstrated that no genuine issue of material fact existed, and the trial court properly granted summary judgment. The trial court's judgment should be affirmed.[6]

---

4. Even in oral argument before this court, Pierce claimed that there was no conflict between his interrogatory answers and his affidavit.

5. In Pierce's response to the Bank's motion for summary judgment, he states that "Plaintiff Pierce treated and intended for both properties to be his homestead property."

6. The majority also discusses the applicability of the "sham affidavit doctrine." Because the affidavit and interrogatory do not conflict as

to whether the Rockwall property was Pierce's homestead on October 13, 2000, I do not reach the applicability of the doctrine to this case.