COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS





FIRST STATE BANK OF MESQUITE, 

                            Appellant,

v.

BELLINGER & DEWOLF, LLP, H.
LYNN MUSGROVE, JR. AND GLEN
BELLINGER,

                            Appellees.

§
 
§
 
§
 
§
 
§
 
 § 


No. 08-09-00032-CV

Appeal from the

193rd District Court

of Dallas County, Texas 

(TC# 08-13950-L) 





O P I N I O N

            First State Bank of Mesquite appeals from a summary judgment granted in favor of
Bellinger & Dewolf, LLP, H. Lynn Musgrove, Jr., and Glen Bellinger.



            In 2004, First State Bank of Mesquite (the “Bank”) loaned approximately $1.7 million to
Fradette Brothers Enterprises, Inc. (“FBE”) for the purchase of H2O Fire Sprinkler Corporation
(“H2O”) from Robert Hawley. FBE executed a promissory note and pledged the assets of H2O
Fire Sprinkler Corporation as collateral for the loan. John Fradette and Mike Fradette executed
personal guaranties in connection with the loan. According to the pleadings, John Fradette had
worked for H2O since 2001 and he had been president of the company since September of 2003.
            FBE subsequently filed suit against Hawley alleging he had misrepresented the financial
condition of H2O (cause number 04-10234-L filed in the 193rd District Court of Dallas County). 
FBE amended its petition to join the Bank as a defendant based on allegations that the Bank had
fraudulently induced it to purchase H2O and enter into the loan transactions. The Bank filed suit
in the 192nd District Court against FBE and the Fradettes seeking to recover on the note and
guaranties (cause number 05-4539-K). The 193rd District Court granted FBE’s motion to
consolidate the two cases and cause number 05-4539-K was transferred to the 193rd District
Court.
            The Bank amended its petition to include third party claims against the Fradettes’
attorneys, Bellinger & DeWolf, LLP, H. Len Musgrove and Glen Bellinger (collectively referred
to as “Bellinger & DeWolf”). The second amended petition alleged that FBE and the Fradettes,
with the assistance of Bellinger & DeWolf, devised a scheme to transfer the pledged assets into a
new company in violation of the security agreements and with the intent to harm the bank. This
pleading further alleged that Bellinger & DeWolf engaged in this scheme or conspired to engage
in the scheme to facilitate Mike and John Fradette’s ability to approach other financial
institutions, including Sterling Bank, Sovereign Bank, Fidelity Bank, Jefferson Bank, and Frost
Bank, and obtain new loans by pledging the same assets. These allegations form the basis of the
fraud (Count 4), conspiracy to breach fiduciary duty (Count 6), and conspiracy to commit fraud
causes of action (Count 7).
            On December 17, 2007, the trial court heard Bellinger and DeWolf’s special exceptions
to the second amended petition. According to the docket sheet, the trial court granted the special
exceptions in part and ordered the Bank to re-plead Counts 4, 5, and 6 to provide a complete
factual basis of these claims as to Bellinger & DeWolf. The trial court did not immediately enter
a written order reflecting its ruling. On December 20, 2007, the trial court entered a standing
scheduling order which set the case for jury trial on July 22, 2008 and established the deadline
for filing amended pleadings asserting new claims or defenses. Under the order, the deadline
was 120 days before the trial setting, or March 24, 2008. On that date, the trial court signed an
order reflecting its ruling on the special exceptions and ordering the Bank to re-plead within
seven days from the date of the order. Inexplicably, the order also required the Bank to re-plead
no later than March 24, 2008, the date the order was signed.
            On April 8, 2008, the Bank filed its third amended petition and counterclaim which
asserted new claims against Bellinger and DeWolf for RICO violations and RICO conspiracy
(Counts 8 and 9). These claims were based on allegations that FBE and the Fradettes, with the
assistance of Bellinger & DeWolf, executed false loan documents and pledged the same
collateral over and over for the purpose of defrauding the banks in a “modern day bank heist.” 
The pleadings also alleged that FBE, the Fradettes, and Bellinger & DeWolf engaged in mail
fraud in violation of 18 U.S.C. §1341 and wire fraud in violation of 18 U.S.C. §1343. On
April 10, 2008, the Bank filed a motion requesting leave to file additional claims or alternatively
requesting that the court modify the scheduling order. That same day, Bellinger & DeWolf filed
a motion to strike the third amended petition and counterclaim because it did not comply with the
trial court’s order on special exceptions and it was untimely filed. Bellinger & DeWolf attached
to its motion three letters addressed to counsel for the Bank asking whether the Bank intended to
file an amended petition in compliance with the trial court’s order on the special exceptions. The
letters also reflect that counsel for Bellinger & DeWolf had been led to believe that the Bank
intended to file an amended petition in March 2008 prior to the deadline. On May 7, 2008, the
trial court struck the Bank’s RICO claims because they had not been filed by the deadline
established by the scheduling order.
            After Bellinger & DeWolf filed a motion for no evidence and traditional summary
judgment, the Bank sought leave to file a fourth amended petition and counterclaim. 
Alternatively, the Bank requested that the court reconsider the ruling on the Bank’s motion for
leave to file its third amended petition. The trial court denied the Bank’s motion. The Bank filed
its response to the summary judgment motion. Bellinger & DeWolf filed written objections to
the Bank’s summary judgment evidence which included the affidavit of Mariano Hernandez. 
The trial court sustained Bellinger & DeWolf’s objections and struck portions of the affidavit of
Mariano Hernandez. The trial court granted the motion for summary judgment as to all of the
Bank’s claims against Bellinger & DeWolf. The Bank timely filed notice of appeal.
THE RICO CLAIMS
            The Bank’s first two issues pertain to the trial court’s order striking the RICO claims
asserted against Bellinger & DeWolf in the third amended petition and refusing to allow
amendment of the Bank’s pleadings to assert these claims. The Bank asserts that the trial court’s
decision amounts to an abuse of discretion.
            A trial court is given wide discretion in managing its docket, and we will not interfere
with the exercise of that discretion absent a showing of clear abuse. Clanton v. Clark, 639
S.W.2d 929, 931 (Tex. 1982); Roskey v. Continental Casualty Company, 190 S.W.3d 875, 879
(Tex.App.--Dallas 2006, pet. denied). Entry of a scheduling order is one type of docket
management. Accordingly, we review a trial court’s enforcement of a scheduling order for an
abuse of discretion. In re Estate of Henry, 250 S.W.3d 518, 526 (Tex.App.--Dallas 2008, no
pet.). A trial court abuses its discretion when its ruling is arbitrary, unreasonable, or without
reference to any guiding rules or legal principles. K-Mart Corp. v. Honeycutt, 24 S.W.3d 357,
360 (Tex. 2000).
            Under Texas Rule of Civil Procedure 63, a party is permitted to file amended pleadings
without leave of court up to seven days before trial. Tex.R.Civ.P. 63. However, the seven-day
deadline does not apply when the trial court has entered a scheduling order pursuant to Texas
Rule of Civil Procedure 166 setting a different deadline. Tex.R.Civ.P. 63; Roskey, 190 S.W.3d
at 879; see G.R.A.V.I.T.Y. Enterprises, Inc. v. Reece Supply Company, 177 S.W.3d 537, 542-43
(Tex.App.--Dallas 2005, no pet.). Even after the time for filing amended pleadings has passed,
the trial court abuses its discretion in denying leave to file an amended pleading unless (1) the
party opposing the amendment presents evidence of surprise or prejudice, or (2) the amendment
asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing
party objects to the amendment. G.R.A.V.I.T.Y., 177 S.W.3d at 542, citing State Bar of Texas v.
Kilpatrick, 874 S.W.2d 656, 658 (Tex. 1994); Greenhalgh v. Service Lloyds Insurance Company,
787 S.W.2d 938, 939 (Tex. 1990). In these two situations, the decision to allow or deny the
amendment rests with the sound discretion of the trial court, and the trial court’s decision will not
be overturned unless it constitutes a clear abuse of discretion. G.R.A.V.I.T.Y., 177 S.W.3d at 542,
citing Kilpatrick, 874 S.W.2d at 658.
            The trial court’s standing scheduling order set March 24, 2008 as the deadline for filing
amended pleadings asserting new claims or defenses. The Bank does not argue that its third
amended pleading did not raise new claims nor does it contend that its third amended petition
was timely filed. It instead asserts that the trial court abused its discretion by refusing to permit
the amendment because Bellinger & DeWolf failed to introduce any evidence in the trial court
establishing surprise or prejudice. The Bank is correct that the party opposing the amendment
generally has the burden to show prejudice or surprise. Greenhalgh, 787 S.W.2d at 939; Hakemy
Brothers, Ltd. v. State Bank and Trust Co., Dallas, 189 S.W.3d 920, 924 (Tex.App.--Dallas
2006, pet. denied). But the trial court may conclude the amendment is on its face calculated to
surprise or that the amendment would reshape the cause of action, prejudicing the opposing party
and unnecessarily delaying the trial. Greenhalgh, 787 S.W.2d at 940; Hakemy Brothers, 189
S.W.3d at 924; Smith Detective Agency & Nightwatch Serv., Inc. v. Stanley Smith Sec., Inc., 938
S.W.2d 743, 749 (Tex.App.--Dallas 1996, writ denied). In such a case, the opposing party’s
objection is sufficient to show surprise. Greenhalgh, 787 S.W.2d at 940 n.3; Hakemy Brothers,
189 S.W.3d at 924.
            Even though the parties had been litigating the case for several years, the Bank waited
until after the scheduling order’s deadline to amend its pleadings to include claims against
Bellinger & DeWolf for RICO violations and RICO conspiracy. The pleadings alleged for the
first time that Bellinger & DeWolf had engaged in mail fraud and wire fraud with the purpose of
defrauding the Bank as well as seven other financial institutions, Bank of America, Jefferson
Bank, Sterling Bank, Parkway Bank, Sovereign Bank, Frost Bank, and Compass Bank. The
pleadings further alleged that Bellinger & DeWolf had conspired with Mike Fradette and John
Fradette to engage in this “pattern of racketeering activity” within the meaning of the RICO
statute. In light of the fact that the trial court had previously granted Bellinger & Dewolf’s
special exceptions and ordered the Bank to re-plead its fraud and conspiracy to commit fraud
claims, the trial court could have found that the late amendment which included the new RICO
claims was calculated to surprise Bellinger and DeWolf. Under these circumstances, we do not
find an abuse of discretion. Issues One and Two are overruled.
SUMMARY JUDGMENT EVIDENCE
            In Issue Three, the Bank challenges the trial court’s ruling which struck portions of the
affidavit of Mariano Hernandez, the executive vice president of the Bank.
            We review a trial court’s ruling concerning the admission or exclusion of summary
judgment evidence for an abuse of discretion. Barraza v. Eureka Company, 25 S.W.3d 225, 228
(Tex.App.--El Paso 2000, pet. denied). A trial court abuses its discretion if it acts in an arbitrary
or unreasonable manner without reference to any guiding rules or principles. Bowie Memorial
Hospital v. Wright, 79 S.W.3d 48, 52 (Tex. 2002). When reviewing matters committed to the
trial court’s discretion, a court of appeals may not substitute its own judgment for that of the trial
court. Bowie, 79 S.W.3d at 52.
            Bellinger & DeWolf moved to strike Hernandez’s affidavit on the ground that it
contradicted his deposition testimony in certain respects without explanation for the change in
his testimony and it was submitted in bad faith to create a fact issue and avoid summary
judgment. The trial court sustained the objections with respect to the portions of the affidavit
regarding: (1) when the Bank decided, agreed to make, or approved the loans in question; and
(2) Hernandez’s review of the Deloitte & Touche report, the contents of the report, and his
findings upon review of the report.
            The Bank’s petition alleged that, John and Mike Fradette, as part of their due diligence in
determining how much to pay for the company, requested that Deloitte & Touche prepare a
valuation report of H2O Fire Sprinkler Corporation. Mike Fradette was a senior partner with
Deloitte & Touche in Boston. According to the petition, the Fradettes provided financial
information to Deloitte & Touche in connection with the valuation report. John Fradette
forwarded this report to the Bank prior to the execution and funding of the loan. The report
covered the fair market value of a controlling interest of H2O Fire Sprinkler Corporation as of
October 1, 2003. The petition also included allegations that Mike and John Fradette, along with
Lynn Musgrove who was counsel for FBE and the Fradettes, met with Mariano Hernandez on
February 11, 2004 at the Bank’s offices for a closing meeting.


 When Hernandez asked the
Fradettes and Musgrove if they had performed all of their due diligence for acquisition of H2O,
Musgrove stated that they had and there were no contingent liabilities other than what was set
forth in the stock purchase agreement. The pleadings go on to allege that the Bank made the loan
based on Musgrove’s representations.
            Hernandez testified in his deposition that at the closing meeting on February 11, 2004, a
decision had already been made to lend the money to FBE. This testimony is significant because
it would show that the Bank did not rely on Musgrove’s statements when it made the loan to
FBE. In his affidavit, however, Hernandez stated that since the valuation report was made as of
October 1, 2003, he asked Musgrove and the Fradettes at the closing whether they had discovered
any contingent liabilities since that date. Hernandez also averred that the decision to lend the
money to FBE was made after the closing meeting on February 11, 2004 and the loan would not
have been made but for Musgrove’s statements that there were no unknown contingent liabilities.
            Hernandez also testified in his deposition that he had not reviewed the valuation of H2O
prepared by Deloitte & Touche. In his affidavit, however, Hernandez contradicted his testimony
by stating he reviewed the Deloitte & Touche report prior to the closing meeting on February 11,
2004. These statements are also material to the Bank claims that it relied on Bellinger &
DeWolf’s representations.
            Citing Randall v. Dallas Power & Light Company, 752 S.W.2d 4, 5 (Tex. 1988) and
Gaines v. Hamman, 163 Tex. 618, 358 S.W.2d 557, 562 (1962), the Bank relies on the rule that a
deposition does not have controlling effect over an affidavit in determining whether a motion for
summary judgment should be granted. Thus, when conflicting inferences may be drawn from a
deposition and an affidavit made by the same person and filed in a summary judgment
proceeding, a fact issue is presented that will preclude summary judgment. Randall, 752 S.W.2d
at 5; Pando v. Southwest Convenience Stores, L.L.C., 242 S.W.3d 76, 79 (Tex.App.--Eastland
2007, no pet.). A different situation is presented, however, when the summary judgment
affidavit is executed after the deposition and there is a clear contradiction on a material point
without explanation for the change. Several intermediate appellate courts have held that such an
affidavit merely creates a sham fact issue and the contradictory statements in the affidavit may be
disregarded. See e.g., Plunkett v. Connecticut General Life Insurance, 285 S.W.3d 106, 119
(Tex.App.--Dallas 2009, pet. denied); Pando, 242 S.W.3d at 79; Trostle v. Trostle, 77 S.W.3d
908, 915 (Tex.App.--Amarillo 2002, no pet.); Cantu v. Peacher, 53 S.W.3d 5, 10-11 (Tex.App.--San Antonio 2001, pet. denied); Eslon Thermoplastics v. Dynamic Systems, Inc., 49 S.W.3d 891, 
901 (Tex.App.--Austin 2001, no pet.); Burkett v. Welborn, 42 S.W.3d 282, 286 (Tex.App.--Texarkana 2001, no pet.); Farroux v. Denny’s Restaurants, Inc., 962 S.W.2d 108, 111
(Tex.App.--Houston [1st Dist.] 1997, no pet.). The First Court of Appeals explained in Farroux
that:
A party cannot file an affidavit to contradict his own deposition testimony
without any explanation for the change in the testimony, for the purpose of
creating a fact issue to avoid summary judgment. If a party’s own affidavit
contradicts his earlier testimony, the affidavit must explain the reason for the
change. Without an explanation of the change in the testimony, we assume the
sole purpose of the affidavit was to avoid summary judgment. As such, it presents
merely a ‘sham’ fact issue.

Farroux, 962 S.W.2d at 111 (footnote omitted).
            We acknowledge that some appellate courts have either limited the sham affidavit
doctrine or have declined altogether to adopt it. See Pierce v. Washington Mutual Bank, 226
S.W.3d 711, 717-18 (Tex.App.--Tyler 2007, pet. denied); Del Mar College District v. Vela, 218
S.W.3d 856, 862 (Tex.App.--Corpus Christi 2007, no pet.); Davis v. City of Grapevine, 188
S.W.3d 748, 756 (Tex.App.--Fort Worth 2006, pet. denied); Thompson v. City of Corsicana
Housing Authority, 57 S.W.3d 547, 557 (Tex.App.--Waco 2001, no pet.). This Court applied the
sham affidavit doctrine in Morgan v. Straub, No. 08-00-00191-CV, 2001 WL 925760
(Tex.App.--El Paso August 16, 2001, no pet.). Even if we disagreed with the doctrine, the Fifth
Court of Appeals has adopted it and we would be obligated to follow its precedent because this is
a transfer case. See Tex.R.App.P. 41.3.
            The trial court could have reasonably concluded that the referenced portions of the
affidavit directly contradicted Hernandez’s testimony without any explanation for the change in
testimony in order to create a fact issue to avoid summary judgment. Accordingly, the trial court
did not abuse its discretion by sustaining the objections and striking these portions of the
Hernandez affidavit. Issue Three is overruled.
SUMMARY JUDGMENT
            In Issue Four, the Bank contends that the trial court erred by granting summary judgment
in favor of Bellinger & DeWolf. The summary judgment motion asserted both traditional and no
evidence grounds and the trial court did not specify the precise basis for its ruling. Consequently,
the Bank is required to negate all grounds on appeal. State Farm Fire & Casualty Company v.
S.S., 858 S.W.2d 374, 381 (Tex. 1993).
Standards of Review
            The standard of review for traditional summary judgment under Tex.R.Civ.P. 166a(c) is
well established. Nixon v. Mr. Property Management Company, Inc., 690 S.W.2d 546, 548 (Tex.
1985). The moving party carries the burden of showing there is no genuine issue of material fact
and it is entitled to judgment as a matter of law. Diversicare General Partner, Inc. v. Rubio, 185
S.W.3d 842, 846 (Tex. 2005); Browning v. Prostok, 165 S.W.3d 336, 344 (Tex. 2005). Evidence
favorable to the non-movant will be taken as true in deciding whether there is a disputed issue of
material fact. Fort Worth Osteopathic Hospital, Inc. v. Reese, 148 S.W.3d 94, 99 (Tex. 2004). 
All reasonable inferences, including any doubts, must be resolved in favor of the non-movant. 
Id. A defendant is entitled to summary judgment if the evidence disproves as a matter of law at
least one element of each of the plaintiff’s causes of action or if it conclusively establishes all
elements of an affirmative defense. D. Houston, Inc. v. Love, 92 S.W.3d 450, 454 (Tex. 2002);
Randall’s Food Markets, Inc. v. Johnson, 891 S.W.2d 640, 644 (Tex. 1995). Once the defendant
establishes a right to summary judgment as a matter of law, the burden shifts to the plaintiff to
present evidence raising a genuine issue of material fact. City of Houston v. Clear Creek Basin
Authority, 589 S.W.2d 671, 678-79 (Tex. 1979); Scown v. Neie, 225 S.W.3d 303, 307
(Tex.App.--El Paso 2006, pet. denied).
            A no evidence summary judgment is essentially a pretrial directed verdict, and we apply
the same legal sufficiency standard of review. Viasana v. Ward County, 296 S.W.3d 652, 654 
(Tex.App.--El Paso 2009, no pet.); Martinez v. Leeds, 218 S.W.3d 845, 848 (Tex.App.--El Paso
2007, no pet.). The party moving for no evidence summary judgment must assert that there is no
evidence of one or more essential elements of a claim or defense on which the non-movant
would have the burden of proof at trial. Viasana, 296 S.W.3d at 654; Martinez, 218 S.W.3d at
848; see Tex.R.Civ.P. 166a(i). The burden then shifts to the non-movant to produce evidence
raising a fact issue on the challenged elements. Viasana, 296 S.W.3d at 654; Martinez, 218
S.W.3d at 848. To raise a genuine issue of material fact, the non-movant must set forth more
than a scintilla of probative evidence as to an essential element of his claim or defense. Viasana,
296 S.W.3d at 654; Martinez, 218 S.W.3d at 848.
Fraud/Fraud in the Inducement
            In Count 4 of its third amended petition, the Bank asserted that it was defrauded or
fraudulently induced into making the Fradette loans by statements made by Musgrove. The Bank
concedes in its brief that if Issue Three is overruled that there are no fact issues precluding the
summary judgment with respect to these claims.
Conspiracy to Breach Fiduciary Duty
            In Count 6 of its third amended petition, the Bank alleged that an “informal trust
agreement” existed between the Bank and FBE and FBE owed the Bank a fiduciary duty based
on the following language in the security agreement:
If this agreement includes accounts, I will not settle any account for less than its
full value without your written permission. I will collect all accounts until you tell
me otherwise. I will keep the proceeds from all of the accounts and any goods
which are returned to me or which I take back in trust for you. I will not mix them
with any other property of mine. I will deliver them to you at your request.

The petition alleges that Bellinger & DeWolf conspired with FBE and the Fradettes to breach this
fiduciary duty. Bellinger & DeWolf moved for summary judgment under Rule 166a(i) on the
grounds that: (1) there is no evidence that the FBE owed a fiduciary duty to the Bank; (2) there
is no evidence that any accounts or goods were returned or taken back by FBE under the 
provision in the security agreement relied on by the Bank; and (3) there is no evidence that the
collateral in which the Bank claims a security interest had any value at the time of the alleged
wrongful conduct. The elements of breach of fiduciary duty are (1) the existence of a fiduciary
relationship, and (2) a breach of duty by the fiduciary (3) that causes damages to the client or
improper benefit to the fiduciary. Burrow v. Arce, 997 S.W.2d 229, 237 (Tex. 1999). The
summary judgment motion challenges each of these three elements.
            The Bank’s summary judgment response plainly addresses whether a fiduciary duty
existed but it fails to address the other two elements. Accordingly, the trial court did not err by
granting summary judgment with respect to this cause of action.
Conspiracy to Commit Fraud
            In Count 7 of the third amended petition, the Bank alleged that Bellinger & DeWolf knew
in June of 2004 when FBE and the Fradettes executed the renewal note and second guaranty that
their clients did not intend to perform their obligation, but Bellinger & DeWolf nevertheless
assisted their clients in executing the documents and advised their clients to execute same. The
petition asserts that Bellinger & DeWolf’s actions constituted conspiracy to commit fraud.
            A plaintiff seeking to prevail on a fraud claim must prove that: (1) the defendant made a
material misrepresentation; (2) the defendant knew the representation was false or made the
representation recklessly without any knowledge of its truth; (3) the defendant made the
representation with the intent that the other party would act on that representation or intended to
induce the party’s reliance on the representation; and (4) the plaintiff suffered an injury by
actively and justifiably relying on that representation. DeSantis v. Wackenhut Corp., 793 S.W.2d
670, 688 (Tex. 1990). The elements of a civil conspiracy are: (1) two or more persons; (2) an
object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one
or more unlawful, overt acts; and (5) damages as a proximate result. Schlumberger Well
Surveying Corp. v. Nortex Oil & Gas Corp., 435 S.W.2d 854, 857 (Tex. 1968); Greenberg
Traurig of N.Y., P.C. v. Moody, 161 S.W.3d 56, 80 (Tex.App.--Houston [14th Dist.] 2004, no
pet.). In addition, civil conspiracy requires specific intent to agree to accomplish an unlawful
purpose or to accomplish a lawful purpose by unlawful means. Juhl v. Airington, 936 S.W.2d
640, 644 (Tex. 1996); A.H. Belo Corp. v. Corcoran, 52 S.W.3d 375, 384 (Tex.App.--Houston
[1st Dist.] 2001, pet. denied).
            Bellinger & DeWolf moved for no evidence summary judgment on the grounds that: (1) 
there is no evidence that FBE and the Fradettes entered into the note renewals with no intention
of performing; (2) there is no evidence of any agreement between the alleged co-conspirators to
cause the injury alleged; (3) there is no evidence that Bellinger & DeWolf advised or assisted
FBE and the Fradettes to enter into the note renewals with knowledge of an intent to not perform;
(4) there is no evidence that Bellinger & DeWolf profited from the renewal transactions; and (5) 
there is no evidence that the Bank suffered any damages as a result of the alleged fraud.
            Although Bellinger & DeWolf challenged multiple elements of the cause of action, the
Bank’s summary judgment response addressed only the evidence pertaining to a false
representation made by Musgrove at the February 11, 2004 closing concerning due diligence, the
Bank’s reliance on that representation, and the Bank’s exercise of ordinary care. The response
does not address the evidence showing a specific intent to agree to accomplish an unlawful
purpose or to accomplish a lawful purpose by unlawful means nor does it address the damages
element. Consequently, the trial court did not err by granting the no evidence summary judgment
motion with respect to this cause of action. Issue Four is overruled.
            Having overruled each issue on appeal, we affirm the judgment of the trial court.



March 30, 2011
DAVID WELLINGTON CHEW, Chief Justice

Before Chew, C.J., McClure, and Rivera, JJ.